## Case No. 14,014.

### THURBER v. The FANNIE.

[8 Ben. 429.][1]

District Court, E. D. New York.   May, 1876.

SHIPPING— POSSESSION—JURISDICTION — MARITIME TORT—ABSENCE OF BILL OF SALE—ENROLLMENT—COSTS.

1. A. E. S. being the owner of a sloop, which had never been enrolled or registered, sold her to T. Part of the purchase money was paid; and it was agreed that A. E. S., who had no bill of sale for the sloop, should procure one from her former owner, and should then give one to T., who should then give him a mortgage on her for $200. T. took possession of the sloop and ran her for nearly a year, during which time she was repaired and altered under the direction of T. by A. E. S., who was a ship-builder, materials belonging to T. being put into her. A. E. S. obtained his bill of sale but never tendered one to T., nor demanded the mortgage. Nearly a year after the sale, A. E. S. forcibly took possession of the sloop while on navigable waters, and thereafter sold her to H. who put A. S. in charge of her, as master. T. filed a libel to recover possession: *Held*, that the court had jurisdiction of the action. although T. had no bill of sale.

[Cited in Wenberg v. A Cargo of Mineral Phosphate, 15 Fed. 287; Haller v. Fox, 51 Fed. 299.]

2. That the sale by A. E. S. to T. was not conditional, but, if it were, the condition had been waived by the acts of the parties.

3. That, as the vessel was never enrolled or registered, the provisions of § 4192 of the Revised Statutes of the United States were not applicable.

4. That the forcible taking possession of the vessel by A. E. S. was a maritime tort, and gave him no title and that, having none himself, he could convey none to H.

5. That one mode of redressing the tort committed by A. E. S. was to reinstate the libellant in the possession of his vessel; and that, therefore, the subject of the action was maritime, and none the less so, because A. E. S. had passed the property to a third party.

6. That, if the question were simply one of title, the jurisdiction of the admiralty would still attach.

7. That the libellant must therefore have a decree for the possession of the vessel, with costs against H. alone and that, as no decree for damages was asked against A. E. S., and he was not in possession of the vessel at the time, the libel, as against him, would be dismissed without costs.

The case of The John Jay, 17 How. [58 U. S.] 399, distinguished. But see the case of Hill v. The Amelia [Case No. 6,487], which was affirmed by the circuit court [see Case No. 275].

[Cited in The Daisy, 29 Fed. 301.]

In admiralty.

Beebe, Wilcox & Hobbs, for libelant.
R. H. Huntley, for respondents.

BENEDICT, District Judge. This is a cause of possession. The libel avers that in April, 1875, the libellant, James E. Thurber,

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

being then in the peaceful possession of the sloop Fannie as the sole owner thereof, one Alonzo E. Smith, accompanied by others, armed with pistols, on the navigable waters of the United States, and within the admiralty and maritime jurisdiction of the United States, forcibly and wrongfully took said vessel from the libellant, and now wrongfully detains the same by the defendant, Alfred Smith, acting under his directions. Process having been issued, citing the said Alonzo E. Smith and Alfred Smith to appear and answer the said libel, and also directing the seizure of said vessel, and that all persons interested therein be cited to appear. Alonzo E. Smith appeared and made answer, denying the averments of the libel, and setting forth that, about the first day of September, 1873, he was the owner of that vessel and in possession thereof and continued in possession and ownership thereof until the 8th day of June, 1875, when he sold the vessel to one Henry Herrman. In addition, Smith sets forth certain facts in respect to an agreement with the libellant for a sale of the vessel to the libellant, which agreement he avers was not performed by the libellant. He also avers that he was in possession of the paper title of the vessel, and, never having delivered the same, he was, as he claims, entitled to the actual possession of her, and therefore he retook the possession of said vessel from the libellant, and thereafter, in good faith, and after his said possession had been acquiesced in, he sold and delivered her with the paper title to Henry Herrman, who thereupon took possession thereof; which said sale and delivery, as averred, was known to the libellant, and acquiesced in by him. Alfred Smith also appeared and made answer, denying all the averments of the libel, except the fact that he was in possession of the vessel, and averred that he was master in charge thereof, under the employment of Henry Herrman. Henry Herrman also intervened for his interest in said vessel, and filed a claim thereto and an answer, in which he sets up that he is the only true and lawful owner of the vessel by purchase from Alonzo E. Smith, then the owner and in possession of the said vessel, which purchase, the claimant avers, was in good faith without any knowledge that the libellant pretended to claim any interest in the vessel. He also avers that the libellant knew of and acquiesced in the possession of said vessel by said Alonzo E. Smith.

The cause coming on to be heard upon these pleadings, a sale and delivery of the vessel by Alonzo E. Smith to the libellant on June 8th, 1874, was duly proved. It was also proved that, on April 6th, 1875, Alonzo E. Smith, by force, deprived the libellant of the possession of the vessel, and that such act was committed upon navigable waters of the United States and within the jurisdiction of this court. The forcible seizure of the vessel is not disputed by the defendants; but it is contended that the sale to the libellant was conditioned upon the libellant's giving to Smith a mortgage upon the vessel to secure two hundred dollars, an unpaid balance of the purchase money, which condition not having been performed, Smith had a lawful right to retake the vessel, as he did, and to convey her to Herrman, as he did. In respect to the terms of the agreement of sale made between Smith and the libellant there is little room for doubt, and the acts of the parties in connection with such agreement are made clear by the evidence. If it can be held upon the evidence, which I do not say, that the execution of a mortgage for $200 was, by the agreement, made a condition of the sale, it is evident that such condition was waived by the unconditional delivery made of the vessel, and the permitting her to be held and used by the purchaser without objection for a long time after the period at which the mortgage was to become due. Not only was the vessel passed into the possession of the libellant without condition, but she was afterwards and while in his possession, under his direction, not only repaired but altered by the defendant, Alonzo E. Smith, who was a ship-builder, and materials furnished by the libellant were put into her by Smith. After such dealing with the vessel and permitting the libellant to sail the vessel for nearly a year, it is not open to Smith to say that the sale was upon condition and that no title passed to the libellant. The fact that no formal bill of sale was given to the libellant has been relied on, to show that it was not intended that the title to the vessel should pass to the libellant. The absence of the bill of sale is however explained by the other fact, as to which there is no dispute, that when the vessel was delivered to the libellant by Smith, Smith himself had no bill of sale and agreed to procure one.

The vessel had been used as a yacht and had not, so far as appears, ever been registered or enrolled, but the intention of the libellant to use her in the coasting trade was known to Smith. For that purpose it would be necessary to have her licensed, and it was therefore made a part of the agreement that Smith should procure a bill of sale to himself from her former owner, and thereafter give a bill of sale to the libellant, who was then to execute a mortgage back for two hundred dollars. Failure to deliver a bill of sale is thus explained, and affords no proof of an intention that the title to the property was to remain in Smith.

As matter of law, therefore, I am of the opinion that the sale and delivery of this vessel to the libellant was unqualified, and the libellant thereby became the sole and only owner thereof. But, if the sale were conditional, the only condition was that the libellant should give a mortgage for $200, upon receiving a bill of sale from Smith, and there

is no evidence of any tender of a bill of sale by Smith. It is proved that the libellant demanded a bill of sale, and that Smith gave, as an excuse for not giving it, that he had not yet obtained his bill of sale from the former owner. It is also in proof that some months after the sale to the libellant, Smith did obtain a bill of sale from the former owner of the vessel; but it cannot be pretended that the evidence shows any tender of a bill of sale to the libellant. If therefore the condition stated was still in force as part of the agreement, it gave Smith no right to demand possession of the property, the purchase money of which had been more than half paid, without previously tendering his bill of sale and thereupon demanding the mortgage. In any aspect of the case, therefore, the act of Smith, in taking forcible possession of the vessel as he did, must be deemed tortious, from which he could derive no benefit and by which he derived no right or title in the vessel. Smith then having no title to convey, Herrman obtained no title by his purchase from Smith, and therefore stands in the position of one without right or title withholding the possession of the vessel from her owner.

It has been contended that the libellant cannot maintain an action in the court of admiralty because he has no bill of sale; and in support of this position reference is made to the following authorities: 3 Kent, Comm. pp. 130, 131; Metcalf v. Taylor, 36 Me. 28; Potter v. Irish, 10 Gray, 416; Veazie v. Somerby, 5 Allen, 280; Chadbourn v. Duncan, 36 Me. 89. But I do not find these cases sufficient to justify a refusal of relief in a case like this.

In this case a contract of sale accompanied with delivery is clearly proved, and there is a writing proved executed by Smith the vendor and by him delivered to the vendee, which is in the form of a receipt for $100, but which states that the $100 is the first payment on the sloop Fannie. Moreover it was part of the contract that a bill of sale should be delivered, which delivery was delayed until the vendor, who at the time had no bill of sale, should procure one. This is not then a case where there has been an attempt to dispense with the well known and ordinary instrument, which is looked to by courts of admiralty as evidence of title. On the contrary, such an instrument was provided for, and its absence is owing to the failure of the vendor to make and deliver it as agreed. The cash portion of the purchase money having been received by the vendor, and the absence of a bill of sale having arisen from the fact that he was not in a condition to give one, it does not lie in the mouth of the vendor to object by reason of its non-production. In Ohl v. Eagle Ins. Co. [Case No. 10,473], where great stress is laid upon the necessity of a bill of sale, the case of Kenny v. Clarkson, 1 Johns. 385, which is like this case in many respects, is said to be distinguishable. Nor do I consider the objection

valid in the mouth of Herrman, the claimant. In the case of The Taranto [Case No. 13,751], which was an action for possession, the libellant recovered although without a bill of sale. The absence of a bill of sale is certainly a fact to be explained; but when explained and the fact of ownership clearly proved, I see no sound reason why a court of equity should as an arbitrary rule require in all cases a formal bill of sale. I am not inclined to be the first one to hold that a bona fide owner and possessor of a ship, although without a formal bill of sale, having been forcibly dispossessed of his vessel by a tort-feasor, is remediless in a court of admiralty, because he has no bill of sale. See 1 Pars. Shipp. p. 57, and cases there commented on.

Again it is contended that a fatal objection to this action arises out of the provision of the act of 1850 [9 Stat. 440], now section 4192 of the United States Revised Statutes, inasmuch as no conveyance of the vessel to the libellant has been recorded at the custom house and there is a failure to show actual notice to Herrman, the claimant.

The answer to this objection is that the statute only applies to vessels which are registered or enrolled, while it does not appear that this vessel was either registered or enrolled. The object of the statute is to enable persons intending to purchase a registered or enrolled vessel to ascertain what conveyances have been made, by an examination in the office of the collector of customs where the vessel is enrolled or registered. In regard to this vessel there was no such custom house, and the claimant could not have been led to rely upon any record of transfer in any such office. In fact, his own bill of sale gave him notice that she was not enrolled or registered, and he was thereby put to rely upon enquiries, to be made elsewhere than in any custom house, for information as to what transfers had been made and what was the nature of the title he was taking.

I have not considered the other points which have been seriously argued in the defense of this action, except that of the jurisdiction of the admiralty to grant the relief prayed. The jurisdiction of the admiralty is denied upon the authority of the case of The John Jay, 17 How. [58 U. S.] 399. But the case of The John Jay simply decides that the court had no jurisdiction of that cause, because the contract on which the action was brought was not a maritime contract. The expression in the opinion that courts of admiralty have "never entertained jurisdiction by a possessory action to try the title, or a right to the possession of a ship," must be considered as relating to cases of mortgage alone. No such sweeping effect, as is here claimed for it, has ever been given to the decision in the case of The John Jay, and I do not consider the authority of that case as extending to a case like this. Here a maritime trespass has been committed by the defendant, Alonzo E. Smith,

THURN (Case No. 14,015) [23 Fed. Cas. page 1182]

of which a court of admiralty may take cognizance. The Commerce, 1 Black [66 U. S.] 579; New Jersey Steam Nav. Co. v. Merchants' Bank (Woodbury, J.) 6 How. [47 U. S.] 432; Manro v. Almeida, 10 Wheat. [23 U. S.] 486. One method of remedy for that wrong is to reinstate the libellant in the possession of his boat. The matter is maritime in all its aspects, and none the less so because, before serving process, the wrong doer passed the property over to a third party, who is thereby enabled to set up a title derived from such wrong doer. The subject matter may therefore well be held to be something more than the mere title to the vessel. But, if it were only a question of title, the jurisdiction would still attach, for the admiralty has jurisdiction of petitory as well as possessory actions, and has often been called upon to adjudicate upon the title to ships. The Tilton [Case No. 14,054]; The Watchman [Id. 17,251]; Blanchard v. The Martha Washington [Id. 1,513]; 2 Pars. Shipp. 186, 187.

I am therefore of the opinion that this court has jurisdiction of the action, and that it is in duty bound to decree the possession of the vessel to the libellant. As it appears that Alonzo E. Smith was not in possession of the vessel at the time of filing the libel, and as no decree for damages is asked against him, the libel as to him will be dismissed but without costs. In regard to the defendant, Alfred Smith, as it appears that he holds possession of the vessel only in the capacity of master, appointed by the claimant, Herrman, the libel is sustained as against him but without costs.

In regard to the vessel and the claimant, Herrman, the decree will be in favor of the libellant that he recover the possession of the vessel and also his costs to be taxed.