## SEMINOLE LUMBER & EXPORT CO. v. BRONX BARGE CORPORATION.

(District Court, S. D. Florida. April 7, 1926.)

No. 2333.

1. Shipping ⟨⟫⟩58(2)—Libel by charterer for injury to cargo from leakage must negative exercise of due care, where seaworthiness was "warranted only so far as ordinary care can provide."

In a suit by the charterer of barges to recover damages for injury to cargo from leakage, under a charter party providing, "Seaworthiness warranted only so far as ordinary care can provide," the libel must state facts which negative the exercise of due care by the owner.

2. Shipping ⟨⟫⟩58(2).

The presumption of seaworthiness arises in all cases of charter, and burden of showing unseaworthiness is on one alleging it.

3. Shipping ⟨⟫⟩42.

A charterer assumes the obligation to see that vessel is seaworthy as to all defects which can be ascertained by inspection.

4. Admiralty ⟨⟫⟩47—Attachment not warranted on cross-libel, purpose of attachment being to bring into court a respondent on whom personal service cannot be had.

The purpose of an attachment in admiralty is to bring into court a respondent on whom personal service cannot be made, and an attachment is not warranted on a cross-libel.

In Admiralty. Suit by the Seminole Lumber & Export Company against the Bronx Barge Corporation. On exceptions to cross-libel, and on motion to discharge attachment. Exceptions sustained, and motion granted.

E. J. L'Engle, J. W. Shands, and W. F. Rogers, all of Jacksonville, Fla., for cross-libelant.

George C. Bedell and Chester Bedell, both of Jacksonville, Fla., for cross-respondent.

CALL, District Judge. This cause comes on to be heard upon the exceptions to the cross-libel, and interrogatories therein and in the answer propounded to libelant, and the motion to discharge the attachment issued upon the cross-libel and served by the marshal.

The exceptions to the cross-libel are upon the insufficiency of the facts alleged to show the liability of the libelant and cross-respondent, and rest upon the terms of the charter party, made a part of both the libel and cross-libel. This charter party provided:

"1. That said vessel shall be tight, staunch, strong, and in every way fitted for such voyage, and with proper towing hawser and lines."

"9. \* \* \* Seaworthiness warranted only so far as ordinary care can provide, and owners are not liable for loss, detention, or damage arising from latent defects existing at the time of sailing."

The cross-libel, after alleging the charter of two barges, the Quantice and Neptune, the receipt of same at the port of New York, and towage of same to the port of Jacksonville, proceeds that, upon the arrival of said barge at Jacksonville, cross-respondent caused the Quantice to be drydocked and repair-

ed, and thereafter said barge was redelivered to cross-libelant; that said repairs consumed the time from January 16th to January 23d; that, upon the arrival of the barge Neptune cross-libelant proceeded to load cargo, consisting of dried and dressed hardwood and pine flooring, etc., and, being partly loaded, the deck leaked from rain to such an extent as greatly damaged the cargo so loaded, which fact was reported to cross-respondent, whereupon it undertook to repair the deck and again tendered the Neptune to cross-libelant.

Thereupon cross-libelant proceeded to load both barges with building material, and proceeded to have the loaded barges towed from Jacksonville to West Palm Beach; that both barges leaked excessively through their decks and holds; that it was necessary to keep the gasoline pumps constantly operating, and by the time they arrived off West Palm Beach the Neptune had exhausted her supply of gasoline, and it was necessary to take her into that port to secure another supply. The cargo on the barges was greatly damaged by such leakings; that, these facts becoming apparent, cross-libelant declined to keep the barges (the charter party was for 90 days) and redelivered them to cross-respondent at West Palm Beach and it accepted them there.

It then proceeds to set forth the damages claimed by reason of the unseaworthiness of the barges; that charter agreed that the barges were tight, staunch, strong, and every way fitted for such voyage, with proper towing hawser and lines, yet such barges were and are not tight, staunch, strong, or fitted for said voyage, and said barges were not and are not adequately manned or provided with chains or cables of sufficient length, or with anchors of sufficient weight and size, for the safe navigation of said barges on voyages contemplated in and by such charter.

[1] The question made by the exceptions is: "Do these allegations make a case justifying the cancellation of the charter and recovery of damages for the loss on cargo occasioned by wetting, etc.? If they do, the exceptions should be overruled. As I understand the contention of cross-respondent, it is that the provision No. 9 of the charter party, quoted above, imposes on the owner only the duty to use due diligence to make and keep the vessel tight, staunch, and strong, and fitted for the voyages contemplated. Granting that this is true; do the allegations negative the use of such diligence by the owner? It is the contention of cross-respondent that

they do not, and that the cross-libel, in order to state a prima facie case, must do this.

[2, 3] The presumption of seaworthiness arises in all cases of charter, and the burden of showing unseaworthiness is upon the one alleging it. It seems to be the law that the charterer assumes the obligation to see that the vessel is seaworthy as to all defects which can be ascertained by inspection, and the owner assumes this obligation, so far as latent defects are concerned, in ordinary cases. Applying this rule to the allegations of the cross-libel, it seems to me that the charterer should have discovered the lack of towing hawser, lines, anchors, etc., and cannot now be heard to urge the want of them as a defense or ground to recover damage. Again, the want of them, under its allegations, in no way contributed to the injuries complained of. The cause of the injuries complained of was the leaking of water. Was this leaking a patent or latent defect? If it was latent, and the owner had used ordinary care, it would not be responsible, under the charter party.

I find no allegation in the cross-libel negativing the use of ordinary care by the owner to make the barges tight. I think the cross-libel should state facts which negative the use of ordinary care by the owner. It is true that the cross-libel states that the charterer was ignorant of the leaky condition; but should it have been discovered on inspection? The cross-libel shows that these barges were received in New York, and towed from that port to Jacksonville, affording ample time to have discovered this leaky condition. The cross-libel, it seems to me, is subject to the exception and such exception must be sustained. The exceptions to the interrogatories attached to the answer to the original libel will be sustained.

[4] This leaves to the motion to dissolve the attachment issued and served under the cross-libel. I have examined the cases of J. Manro et al. v. Joseph Alimeda, 23 U. S. (10 Wheat.) 206, 6 L. Ed. 369; Cole v. The Brandt, Fed. Cas. No. 2,978; Essler et al. v. Worth et al., Fed. Cas. No. 4,533a; and Bouysson et al. v. Miller et al., Fed. Cas. No. 1,709; and from these cases I deduce the rule that the object of the attachment of the goods, credits, and effects of a respondent upon whom personal service cannot be made is for the purpose of bringing that respondent into the court, and that upon his appearance the attachment should be vacated. It is for the purpose of bringing the respondent into court, because, owing to his absence, the court can in no other way obtain jurisdiction

of his person. In the case of the filing of a cross-libel, the cross-respondent is already in court and the monition can be served upon his proctor.

The motion to dissolve the attachment will therefore be granted.