# AKTIESELSKABET DEA v. WRIGHTSON.

## THE COPPERFIELD.

Circuit Court of Appeals, Fifth Circuit.
May 14, 1928.

No. 5208.

1. **Admiralty ☞32—Corporation organized under laws of foreign country could be sued for admiralty tort in any District Court of United States where found or in which it had property.**

Corporation organized under laws of foreign country could be sued for an admiralty tort in any District Court of United States where found or in which it had property that might be subjected to writ of foreign attachment.

2. **Admiralty ☞25—By filing cross-libel, respondent, notwithstanding objection to jurisdiction in answer, submitted itself to court's jurisdiction.**

By filing cross-libel, respondent, a corporation organized under laws of foreign country, notwithstanding objection to jurisdiction which had been reserved in answer, waived any defect of service and submitted itself to jurisdiction of court, and attachment became merely incidental.

3. **Collision ☞75(3)—Sailing vessel held not at fault in showing white lantern on stern when almost directly ahead of steamship (International Rules [33 USCA § 61 et seq.]).**

Sailing vessel *held* not at fault in showing white lantern on her stern when she was almost directly ahead of steamship which later collided with sailing vessel, under International Rules (33 USCA § 61 et seq.; Comp. St. § 7834 et seq.).

4. **Collision ☞75(11)—Steamship held solely responsible for collision with overtaken sailing vessel in Gulf of Mexico (International Rules [33 USCA § 61 et seq.]).**

Steamship, whose officer in charge saw white light on stern of sailing vessel ahead in ample time to have avoided collision, *held* solely responsible for collision in Gulf of Mexico, under International Rules (33 USCA § 61 et seq.;

Comp. St. § 7834 et seq.) which governed movements of vessels before and at time of collision.

Appeal from the District Court of the United States for the Southern District of Alabama; Robert T. Ervin, Judge.

Libel by Walter Wrightson, as managing owner of the American schooner Copperfield, against the Aktieselskabet Dea, in which respondent filed cross-libel, and in which a writ of foreign attachment was prayed for, and garnishment was issued and served on the American Bauxite Company. From the decree, respondent appeals. Affirmed.

Elliott G. Rickarby, of Mobile, Ala. (Rickarby, Beebe & Coley and M. V. Hanaw, all of Mobile, Ala., on the brief), for appellant.

Alex T. Howard, of Mobile, Ala., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. This suit was brought in personam by appellee to recover damages caused to the schooner Copperfield, by a collision between that vessel and the steamship Dea. A writ of foreign attachment was prayed for, and garnishment issued and was served on the American Bauxite Company, through its agent in Mobile, to attach certain charter money. The garnishee answered, admitted the charter, and that $3,458.95 was due appellant for future hire, payable in advance, contended that it was payable in New York and therefore not subject to attachment in Mobile, and moved to dismiss the writ. This motion was overruled, and appellant then moved that the amount admitted to be due be deposited in the registry of the court. This was granted, and thereafter appellant was allowed to substitute a bond and take out the money. Appellant answered, with reservation of an objection to the jurisdiction, but also without any reservation whatever, filed a cross-libel, and prayed for damages in the amount of $10,000. On this admiralty process issued, and the Copperfield was seized.

[1, 2] Error is assigned to the action of the court in refusing to set aside the garnishment and dismiss the libel. We are not required to go into the technicalities of this question. Appellant is a corporation organized under the laws of Norway, and therefore could be sued for an admiralty tort in any District Court of the United States where found, or in which it had property that might be subjected to a writ of foreign attachment. In re Louisville Underwriters, 134 U. S. 488,

10 S. Ct. 587, 33 L. Ed. 991; Manro v. Almeida, 10 Wheat. 473, 6 L. Ed. 369. By filing a cross-libel, notwithstanding the objection to the jurisdiction which had been reserved in the answer, any defect of service was waived, it submitted itself to the jurisdiction of the court, and the attachment became merely incidental. Cole v. Cunningham, 133 U. S. 107, 10 S. Ct. 269, 33 L. Ed. 538; Merchants' Heat & Light Co. v. Clow & Sons, 204 U. S. 286, 27 S. Ct. 285, 51 L. Ed. 488; Texas & Pacific Ry. Co. v. Eastin & Knox, 214 U. S. 153, 29 S. Ct. 564, 53 L. Ed. 946; American Mills Co. v. American Surety Co., 260 U. S. 360, 43 S. Ct. 149, 67 L. Ed. 306.

There is very little dispute as to the material facts except as to whether the Copperfield carried regulation side lights. As to that the evidence is in hopeless conflict; all of the witnesses on the schooner testifying that they were burning brightly at all times, and all of the witnesses on the Dea testifying that they did not see them. However, we deem this immaterial in fixing the ultimate liability of the vessels.

It is also reasonable to infer from the testimony that the Dea did not have a lookout on the forecastle. There is some mention made in the testimony that there was such a watchman, but he was not produced as a witness, and the testimony is unsatisfactory. However, if he was there, he was incompetent. On a clear night he should have seen a vessel with all sails set in time to report her presence to the bridge so as to avoid a collision, but did not do so. This also is immaterial.

The Copperfield was on a voyage from Porto Rico to Gulfport, and the Dea was on a voyage from Gulfport to British Guiana. The collision occurred about 9 o'clock on the night of May 22, 1925, in the Gulf of Mexico. The night was bright and clear, with stars shining. The sea was smooth, with a very light southeast breeze blowing, and the Copperfield, with all sails set, was making about one knot an hour, barely sufficient for steerage way. The tonnage of the Copperfield is not shown. The Dea is a steamship of about 4,200 tons. She was making about 8 knots an hour. Some time before the collision, the schooner had a bright lantern on her quarter deck which showed all around the horizon. It is the presence of this white light and the absence of side lights that is relied on by the Dea to show the fault of the Copperfield.

The International Rules for Navigation at Sea (33 U. S. C. § 61, et seq. [33 USCA §

61 et seq.; Comp. St. § 7834 et seq.]) governed the movements of the vessels before and at the time of the collision. So far as is material to this inquiry those rules may be briefly stated as follows. A steam vessel is required to carry the regulation red and green side lights and a white light on the fore part of the vessel at a height above the hull of not less than 20 feet, and she may carry, but is not required to carry, range lights or a stern light in line with the masthead at an elevation of at least 15 feet higher. Sailing vessels under way must carry regulation side lights, but are prohibited from carrying the white lights of a steamer. A vessel which is being overtaken, except a steamer carrying regulation white range lighter, must exhibit from her stern to the overtaking vessel a white light showing all around the horizon, and, if necessary in order to attract attention, in addition to the regular lights, may show a flare-up light. When a steam vessel and a sailing vessel are proceeding in such directions as to involve risk of collision, the steam vessel must keep out of the way of the sailing vessel, and, on approaching her, if necessary, must slacken her speed or stop or reverse; and any overtaking vessel must keep out of the way of the overtaken vessel. Article 24 of the Rules provides that any vessel coming up with another vessel from any direction more than two points abaft of her beam; that is, in such a position with reference to the vessel she is overtaking that at night she would be unable to see either of that vessel's side lights, shall be deemed to be the overtaking vessel.

[3] With reference to the application of these rules, the situation of the two ships immediately before the collision was this: The Copperfield was practically helpless in the light breeze, with barely steerage way, could not have answered her helm promptly, and could not have made any maneuver to avoid the collision. She observed the steamer approaching and exhibited a white lantern on her stern, which she had the right to do, as she at that time was almost directly ahead of the Dea and in practically the same position as an overtaken vessel. She was guilty of no fault in showing the lantern.

[4] With regard to the Dea, the second officer was in command and on the bridge at the time of the collision. He testified that about 8:50 he saw a dim white light about three points off the starboard bow, which he took to be a steamer's light. He looked at it a while and then went into the chart room and took out his binoculars. He observed the light some time longer through the binoculars and then lost it. He then became frightened and thought it might be a sailing vessel, because in that locality schooners and small craft without side lights were often met. He gave a long blast of his whistle. Just as he let go the whistle string, he heard a cry from the Copperfield. Then he saw the sails of the schooner. He knew there would be a collision, and he gave an order to put the wheel hard astarboard, and signaled the engines for full speed astern, but they had not been reversed when the collision occurred. He fixed the time elapsing between first seeing the light and the collision at from three to five minutes. Making due allowance for inaccuracies in estimating time, it is reasonably certain from the second officer's testimony that at least three minutes elapsed between the time he first saw the light on the Copperfield until the collision occurred. The Dea was making a speed of about 8 knots at the time, so was at least a half a mile away.

The officer in charge of the steamer saw the light on the schooner in ample time to have avoided the collision had he taken the slightest precaution to do so. The light was sufficiently in his course to advise him of the probable danger of the collision, and the very fact that he did not see the side lights was an additional warning. Furthermore, he expected to find sailing vessels and small craft in that vicinity without side lights. It was his duty to keep out of the way of sailing vessels and any vessels he was overtaking, and the light exhibited should have conveyed the message to his mind that a vessel was in fact being overtaken. Had he slowed down his engines when he first saw the light, or altered his course slightly, he could have avoided the collision, but he did not do so. There was nothing the schooner could have done to avoid it. In these circumstances we think the District Court was right in holding the Dea solely responsible for the collision and awarding damages accordingly.

Affirmed.