**GARDNER et al. v. DANTZLER LUMBER & EXPORT CO., Inc.**

No. 8641.

Circuit Court of Appeals, Fifth Circuit.

Aug. 9, 1938.

Harry F. Stiles, Jr., of New Orleans, La., and W. F. Hobbs, of Tampa, Fla., for appellants.

Joseph P. Lieb, Morris E. White, and E. C. Johnson, all of Tampa, Fla., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

Appellee, Dantzler Lumber & Export Co., Inc., filed a libel in personam, against L. C. Gardner, to recover damages of $2,-929.46, for loss of a cargo of 101,800 feet of pine lumber shipped from Mobile, Alabama, to Nuevitas, Cuba, on the schooner J. Edwin Kerwin, which vessel foundered at sea with a total loss of cargo and vessel. The libel alleged that the vessel was unseaworthy at the inception of the voyage. Later an amended libel was filed naming R. C. Gardner as the owner of the Kerwin. L. C. Gardner answered, admitting ownership of the vessel, the contract of affreightment and total loss of the vessel and cargo, but denying unseaworthiness. He also filed a cross libel to recover $1,063.57, a general average award against the cargo, and also filed a petition in limitation of liability. R. C. Gardner filed an answer alleging ownership of the schooner to be in L. C. Gardner and denying ownership in himself. A decree was entered in favor of libellant in the sum of $2,929.46 against both R. C. Gardner and L. C. Gardner, and dismissing the cross libel and the petition in limitation of liability. This appeal followed.

The district court found as facts that R. C. Gardner and L. C. Gardner were the owners and operators of the schooner, J. Edwin Kerwin; that at the inception of the voyage she was unseaworthy and her owners failed to use due diligence to make her seaworthy.

It is unnecessary to review the evidence extensively or cite authorities in support of the district court's conclusions of law. The vessel was an old wooden schooner of about 138 gross tons. She was bought by R. C. Gardner at a marshal's sale on February 15, 1934, and paid for by him in cash. On February 20, 1934, he executed

an act of sale of the vessel to his brother, L. C. Gardner, and she was registered in his name. L. C. Gardner was insolvent, had no knowledge of ships and saw the schooner only once after he was supposed to have acquired her. B. D. Gainey got in touch with L. C. Gardner for the purpose of chartering the schooner for libellant. He testified as follows. He was told by L. C. Gardner that his brother was the owner of the vessel and he would have to see him. He did so and R. C. Gardner conducted the negotiations for the charter and appointed Gainey as master of the vessel. R. C. Gardner paid for repairs to the vessel and for supplies. He was active in the management of the Kerwin. When Gainey demurred about taking all the lumber that was tendered, especially heavy timber that would of necessity be stored on deck, R. C. Gardner ordered him to take at least 100,000 feet so as to clear at least $600 in freight money. There was other evidence tending to show that at several other times R. C. Gardner held himself out as the owner of the vessel. All the evidence on the question of ownership of the schooner tended to show that R. C. Gardner was her owner, except the denial of himself and brother and the deed of sale. This was not conclusive in view of the other evidence. Indeed, the presumption must be indulged that R. C. Gardner put the legal title of the vessel in his insolvent brother to avoid liability for possible claims arising from her operation. Courts of admiralty administer the broadest equity and may look through such transactions to ascertain the truth.

There was evidence tending to show that the vessel was unseaworthy for the voyage when she broke ground; that she was overloaded; that the cargo was improperly stored; and that R. C. Gardner was charged with knowledge of these facts. On the voyage, in ordinary weather, she listed heavily because of leaks, shipped more water and eventually foundered. The burden was on respondents to prove she was seaworthy. They offered no evidence to this effect. The evidence in the record is sufficient to prove the contrary.

The district court heard the witnesses in open court. His findings of facts are entitled to great weight and are fully supported by the record. The record shows no reversible error.

The judgment is affirmed.