**SWIFT & CO. PACKERS et al. v. COMPANIA COLOMBIANA DEL CARIBE, S. A.**

No. 12608.

United States Court of Appeals
Fifth Circuit.

May 30, 1949.

Rehearing Denied July 20, 1949.

Harry F. Stiles, Jr., New Orleans, La., for appellants.

Charles E. Ramirez, Ancon, Canal Zone, Nicholas J. Healy, 3d New York City, for appellee.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

On March 7, 1948, Swift and Company, Packers, a Corporation of Nevada, U. S. A., joined by several corporations and citizens of Cuba and a citizen of the Republic of Columbia, brought a libel in personam in the District of the Canal Zone against Compania Transmaritima Columbiana, a corporation of the Republic of Colombia, to recover for the loss of a cargo of rice by the wrecking of the vessel Cali, owned by the respondent, off the island of Grand Cayman. The cargo was shipped at Guayaquil, Ecuador, for Cienfuegos, Cuba, and libelants severally bought interests in it while in transit. Process was prayed against respondent, or if it could not be found within the District, then by foreign attachment against its goods and chattels within the District, and particularly a vessel known as the Alacran, or Caribe.

Process was issued accordingly, and the Marshal returned that he had served it on March 8 by going aboard the named vessel in the Canal locks and delivering a copy to the master, and taking into custody the vessel and her tackle, etc., and also some gear, hoists, winches, etc., from the vessel Cali, as goods and chattels of respondent. The same day a supplemental and amended libel was filed which on information and belief charged that about four days pre-

McCORD, Circuit Judge, dissenting.

viously a new corporation, Compania Colombiana del Caribe, had been formed under the laws of Colombia to take over respondent's property, and especially the vessel Alacran, renamed the Caribe, in fraud of libelant's rights, but the two Companies were really one and the same. Alternatively it was alleged that the new Company is indebted to respondent for the purchase price of the Caribe. New process was prayed against both Companies, and if not found, against their goods and chattels by foreign attachment, and that the Caribe be attached as the property of the original respondent and as security for the unpaid purchase money, and that the new respondent answer on oath as garnishee. There was a prayer that both respondents pay to libelants their several damages as at first claimed. The marshal made a similar return on this process. In neither return did he say that respondents were not found in the district. The master of the Caribe on March 15 filed a claim in behalf of the new corporation, swearing it was the bona fide owner and he in possession as its lawful bailee, and gave a cost bond. On the same day the new Company by its proctors made a motion, supported by an affidavit which is mainly a legal argument, that the court decline jurisdiction and vacate the attachment, on the grounds that the case is between foreigners, that the Caribe is not responsible for the damages claimed, and the question of alleged fraudulent transfer is a matter to be decided in the Republic of Colombia where it was made. There were exhibited the bills of lading for the rice, an opinion of a Colombian attorney that the transfer of the Alacran was not fraudulent under the laws of Colombia, and an authenticated copy of the registration of the Caribe as owned by the Compania del Caribe made at Baranquilla, Colombia, on March 4, 1948. The motion was overruled by the judge while he was absent in Kentucky. Two months later the original respondent answered to the merits, admitting the loss of the rice, but denying liability

for reasons stated, and claiming a limitation of liability to the value of its interest in the Cali and her pending freight. The second respondent also answered to the merits, denying liability, and affirming its good faith ownership of the Caribe, and praying for a decree to that effect.

The district judge, having retired as such without returning to the Canal Zone, was succeeded by a new judge, and after another two months, on August 16, 1948, the proctors for the second respondent again moved to vacate the attachment of the Caribe, and to dismiss the supplemental libel as to itself on the grounds that no cause in admiralty was alleged against this respondent or the Caribe, and there was no jurisdiction to subject her to a lien, or to proceed in garnishment; that the matters alleged against this respondent belong to the jurisdiction and commerce of Colombia, and it is against good policy to seize in the Canal for debt vessels passing through. A new and more factual affidavit was submitted as to the ownership of the Caribe, as to the separate stockholding and officering of the new corporation, and the pendency in other jurisdictions of two other libels by libelants for the same damages against the original respondent and others. No reply affidavit was offered, and no objection was made by libelants to the consideration of those on file. On August 30, 1948, the motion was heard and briefs submitted, and the judge found the facts to be that the Cali was beached and lost Jan. 17, 1948; that in the latter part of February, 1948, citizens of the Republic of Colombia formed under the laws of Colombia the corporation Compania Colombiana del Caribe, some but not all the stockholders being stockholders in Compania Transmaritima Columbiana;[1] the managing officers of the two corporations were different persons, except that one was chairman of the Board of Directors of both. The affidavit filed by movant states the Alacran was sold to the new corporation on Feb. 25, 1948, by public

---

[1] The affidavit is that Keene, who owns 39 percent of the stock in the Transmaritima, owns about the same percent in del Caribe; but Echeverri, who owns 12 percent in Transmaritima, owns 58 percent in del Caribe; that Losada and Marulanda, who own 12 and 36 percent in Maritima, own none in del Caribe; and that three other stockholders in del Caribe own no stock in Maritima.

deed No. 4 made before the Consul General of Colombia in Panama, and recorded in the public records. On March 4 the name was changed to Caribe and the vessel registered in that name as owned by the new corporation at Barranquilla, Colombia. She was seized March 8 in the Canal. The court then held that while there was a proper claim in admiralty against the Compania Maritima in personam, there was no direct claim against the Compania del Caribe, for that corporation did not exist when the cargo was lost, and if because of fraud in disposing of assets to it Compania del Caribe was accountable in equity, still that would not be a maritime claim. Consequently no claim of which the court has jurisdiction is stated against that corporation, and it can be held only as garnishee for any property or effects it may have in its hands belonging to Compania Maritima. He further held that if there was jurisdiction to enquire into the organization of the new corporation and the acquisition of the Alacran, since it all depended on the laws of Colombia and all witnesses were there, and since all but one libelant are foreigners, as are both the respondents, he would exercise his discretion to decline the enquiry. On motion for rehearing these views were adhered to, and the evidence by affidavit having been criticized, he held that the main facts sufficiently appeared from libelants' pleadings and the documentary proofs. It was adjudged that the attachment of the Caribe be vacated and the vessel delivered to Compania del Caribe free of costs and charges incident to seizure and custody, but that an answer as garnishee be made by Compania del Caribe within thirty days. This appeal was thereupon taken.

■ 1. We gravely doubt that the order is appealable, not being final nor determining fully any party's rights. We resolve the doubt in favor of our jurisdiction because the vessel, now held for more than a year, ought to be disposed of. The court correctly held that no maritime liability is asserted against the Compania del Caribe or the vessel Caribe; and that the libel in personam against the Compania Maritima is good, as is the garnishment against Compania del Caribe, requiring it to answer as to all property of the other Company in its hands and debts owing to it.

■ 2. As to the foreign attachment of the Caribe as the property of the Compania Maritima, we note that the Marshal did not return that respondent was not to be found in his district. Unless he failed to find the respondent, neither Admiralty Rule 2, 28 U.S.C.A., nor the process in his hands authorized him to attach any property. But as the fact of the respondent's absence is apparently unquestioned, and as the return could be amended in this respect, we pass that point. But it remains that only property of the respondent can be attached. The purpose of foreign attachment in admiralty is to secure an appearance. Manro v. Almeida, 10 Wheat. 473, 6 L.Ed. 369; Seminole Lumber & Export Co. v. Bronx Garage Corp., D.C., 11 F.2d 982, and cases cited. And see historical discussion in The Bremena v. Card, D.C., 38 F. 144. Appearance has been entered here and answer filed. The vessel is now sought to be held as security for a money claim not yet proven. And she is not claimed by the respondent, but by a third person who is a vendee corporation by act of sale recorded prior to her seizure. If the respondent has any interest in her it must be an equitable one or one arising from unpaid purchase money; and after the lapse of a year no evidence has yet been put into this record that there is any such interest. The vessel when seized was not in the possession or service of respondent, and the burden is surely on libelants to show a justification for her seizure. The present possessor, and apparent owner of title, has a right to a prompt enquiry. Rule 23 of the District Court of the Canal Zone provides for it. It reads in part: "In case of the attachment of property * * * any person having a right to intervene in respect of the thing attached may, upon evidence showing any improper practice or a manifest want of equity on the part of libelant, have an order from the judge requiring libelant to show cause instanter why the * * * attachment should not be va-

cated." [2] The motion made in this case is pursuant to the rule. One of its grounds is in the very words of the rule. The affidavit evidence and the exhibits, while not of the most satisfactory kind, were enough under this rule to require the libelants to show some cause why the vessel should be held as the property of respondents. Neither on the hearing, nor on the rehearing completed September 20, 1948, more than six months after seizure, have libelants proved anything at all to support their contention, alleged on information and belief only, that the vessel is really the property of respondent Compania Maritima. As a summary remedy the motion to vacate was properly sustained. There is, however, no adjudication of the title.

■ 3. As to the amended libel against Compania del Caribe, the court concluded that it is without jurisdiction to enter *before judgment for the debt* upon the trial of a creditor's rights in property alleged to have been fraudulently transferred to a third person. The claim in personam against Maritima has not yet been established. Admiralty Rule 20 provides for collecting money decrees by execution, but not by such anticipatory proceedings. The jurisdiction is doubtful. The present Rule 20 concludes: "And any other remedies shall be available that may exist under the state or federal law for the enforcement of judgments or decrees." It is probable that after judgment the admiralty court could, like a court of equity, seek out and condemn equitable assets. Lee v. Thompson, Fed. Cas. No. 8,202, involved a proceeding after judgment. Gardner v. Dantzler Lumber & Export, 5 Cir., 98 F.2d 478, did not adjudicate the equitable title to the ship, the only question being which of two brothers was liable in personam for a loss of cargo. Both were held liable. We believe there is no precedent for what was attempted in the libel against Compania del Caribe, before a judgment has been obtained against Compania Maritima. But there is a discretion, as the court held, to refuse enquiry, even if

there be jurisdiction, where the case is about foreign business and the transaction was between foreigners and depends on foreign law, and the witnesses reside abroad.

The authorities on all these points are well discussed in The Melmay, 1932 A.M.C. p. 1396, in which a summary motion under Canal Zone Rule 23 was granted on facts much like those here presented. On the whole we find no error in the judgment complained of and it is, without prejudice to further enquiry into the ownership of the Caribe in the garnishment or on proper proceedings to enforce a judgment in personam against Compania Maritima, if obtained,

Affirmed.

McCORD, Circuit Judge (dissenting).

I am forced to the conclusion that my brothers have erred in their statement of the law applicable to this type case. I further believe that they have been unable to visualize and comprehend the far reaching effect and import of their decision. For these reasons, and in order to record a more detailed statement of the essential facts alleged, I have found it necessary to review and set out pertinent portions of the pleadings.

The original libel reveals that respondent, Compania Transmaritima Columbiana, South America, was the owner of two merchant vessels, the Cali and the Alacran. The Cali, while delivering a shipment of approximately 30,000 bags of rice belonging to libelants from Ecuador to Cuba, began to leak, and was forced to put into the port of Georgetown, off Grand Cayman Island. There a portion of the rice cargo was discharged, and the remainder either severely damaged, or abandoned in the wrecked hull of the vessel so as to become a total loss. It is alleged that additional damage was done to that portion of the rice removed to the island of Grand Cayman, through the failure of respondent to take precautions against pilferage, and to provide for adequate storage. No portion

---

[2] Similar rules are stated to exist in the Southern District of New York, the Eastern District of New York, and Northern District of California in 2 Benedict on Admiralty, 6 Ed. p. 399.

A claim is stated also to be a proper mode of intervention by a third person whose property may be attached. Id., p. 428.

of the shipment of rice was ever delivered to any of the libelants at their intended ports of destination in Cuba.

In their supplemental and amended libel, libelants charge:

"Since the filing of the original libel herein on March 7, 1948, libelant has learned that respondent Compania Transmaritima Columbiana, S.A., has attempted, on or about March 4, 1948, to divest itself of its property and assets and particularly the Steamship Alacran in fraud of libelants' rights. * * *

"Said Compania Colombiana Del Caribe, S.A. was organized by the directors, officers and stockholders of respondent Compania Transmaritima Columbiana, S.A., and no substantial monies were paid into its treasury for the issuance of the stock thereof, if any such stock were actually issued. Compania Colombiana Del Caribe, S.A., is merely the creature or alter ego of Compania Transmaritima Columbiana, S.A., and/or its directors, officers and stockholders. The attempted transfer of the Steamship Alacran from Compania Transmaritima Columbiana, S.A., to Compania Colombiana Del Caribe, S.A., was not for a real or valid consideration and no real equitable price was paid therefor but, as before alleged, said attempted transfer was wholly fictitious and in an attempt to defraud your libelants of their rights. * * *

"There is no real or actual difference between respondents Compania Transmaritima Columbiana, S.A., and Compania Colombiana Del Caribe, S.A., and before this Court of admiralty of the United States they should be held to be, as they are, one and the same. * * *"

The material portion of the prayer of the amended libel was worded as follows:

" * * * In case said respondents can not be found within this district, then all goods and chattels belonging to them within this district and in particular a certain vessel formerly known as the Alacran, now registered under the name Caribe, now lying in the Panama Canal or within the waters constituting the Pacific entrance to said Canal, within this district, its engines, boilers, tackle and gear of whatever nature or character, may be attached by process of foreign attachment in the amount of Three Hundred Eighty Thousand ($380,-000.00) Dollars, the sum sued for in this libel, with interest and costs and disbursements of your libelants. * * *

"Alternatively, that the Steamship Caribe, formerly the Alacran, be attached in the hands of respondent Compania Colombiana Del Caribe, S.A., as being in reality the goods and effects of respondent Compania Transmaritima Columbiana, S.A. and/or as the sole security for the agreed purchase price of said vessel in said purported sale from respondent Compania Transmaritima Columbiana, S.A., to respondent Compania Colombiana Del Caribe, S.A. * * *"

I do not share the conclusion of the majority that jurisdiction in this case is doubtful, but believe the district court had jurisdiction to inquire into the ownership of the Steamship Caribe, and into the question of whether the alleged fraudulent transfer had effectively passed title to the vessel from respondent to Compania Del Caribe. There is ample authority for the proposition that a court of admiralty has jurisdiction to inquire into the ownership of property attached under its process and into the bona fides of a sale of such property by a respondent, even where the purported assignment takes place prior to the attachment. Gardner et al. v. Dantzler Lumber & Export Co., Inc., 5 Cir., 98 F.2d 479; Chirurg v. Knickerbocker Steam Towage Co., D.C., 174 F. 188; Cf. Kingston Dry Dock Co. v. Lake Champlain Transp. Co., 2 Cir., 31 F. 2d 265; The New York, 2 Cir., 113 F. 810, 811; The Columbia, D.C., 100 F. 890, 893; The Daisy, D.C., 29 F. 300, 301; Lee v. Thompson, et al., Fed.Cas. No. 8,202, 3 Woods 167; Ward v. Peck, 18 How. 267, 15 L.Ed. 383; The Tilton, Fed.Cas. No. 14,054, 5 Mason 465; Thurber v. The Fannie, Fed.Cas. No. 14,014, 8 Ben. 429. Even as early as 1878, before this court was created, the Circuit Court of Louisiana, which had substantially the same appellate jurisdiction as this court, laid down the rule thus:

"The power of the Court (of Admiralty) to entertain such contestations upon all seizures made under its authority would seem to be indispensable. It is as necessary that it should have power to decide between

conflicting claims to property seized by attachment or on execution as in seizures upon libels in rem. * * * Without power to try the validity of conflicting claims, the court could not enforce its judgments for the payment of money. They could always be defeated by fraudulent and simulated transfers. If a third party comes in to claim the property which has been seized, he must submit himself to the jurisdiction of the court." Lee v. Thompson, Fed.Cas. No. 8,202, 3 Woods 167.

Thereafter, in the case of Gardner et al. v. Dantzler Lumber & Export Co., Inc., 5 Cir., 98 F.2d 478, at page 479, this court looked through not only the register of a vessel, but also the bill of sale covering its alleged purchase, and in determining the question of its true ownership, Judge Foster observed:

"All the evidence on the question of ownership of the schooner tended to show that R. C. Gardner was her owner, except the denial of himself and brother and the deed of sale. This was not conclusive in view of the other evidence. Indeed, the presumption must be indulged that R. C. Gardner put the legal title of the vessel in his insolvent brother to avoid liability for possible claims arising from her operation. Courts of admiralty administer the broadest equity and may look through such transactions to ascertain the truth."

As late as the year 1941, this court recognized that admiralty has jurisdiction of petitory as well as possessory suits in respect of ships or vessels engaged in navigation or commerce, wherein it stated:

"The jurisdiction actually invoked and exercised is that in admiralty. Admiralty jurisdiction, especially in petitory and possessory suits, exists only in respect of ships or vessels engaged in navigation or commerce, and not over hulks, or vessels that have been permanently taken out of such use. * * *" Kilb v. Menke, 5 Cir., 121 F.2d 1013, 1014.

Not one of the authorities cited by the district court or in the majority opinion establishes anything to the contrary. Cf. Kingston Dry Dock Co. v. Lake Champlain Transp. Co., 2 Cir., 31 F.2d 265; Yone Suzuki & Co. v. Central Argentine Ry., D.C., 19 F.2d 645, Yone Suzuki v. Central Argentine Ry., 2 Cir., 27 F.2d 795-806; The Ada, 2 Cir., 250 F. 194. Moreover, in view of the allegations in both the original and amended libels that Swift & Company Packers, who owned half of the entire cargo of the lost vessel, is a citizen of the United States, and the undisputed fact that all but one of the remaining libelants are citizens of Cuba, I am inclined to the view that the district court had no discretion to decline jurisdiction. The Copperfield, 5 Cir., 26 F. 2d 175; In re Louisville Underwriters, 134 U.S. 488, 10 S.Ct. 587, 33 L.Ed. 991; Cf. The Belgenland, 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152. Even if there be such discretion, the district court clearly abused its discretion in declining to exercise its jurisdiction on a mere summary motion to vacate the attachment, supported only by incompetent and hearsay affidavits and exhibits, when the jurisdictional facts were clearly in dispute. The Othello, Fed.Cas. No. 2,483; Cushing et al. v. Laird, Fed.Cas. No. 3,508; The Circassian, Fed.Cas. 2,721; L. Littlejohn & Co., Inc., v. United States, D.C., 49 F.2d 467; Sundquist v. Gray, D.C., 48 F. 2d 638; The Algie, D.C., 50 F.2d 624; The Senator, D.C., 54 F.2d 420; Cf. United States v. Specified Quantities of Intoxicating Liquors et al., 2 Cir., 7 F.2d 835; Charter Shipping Company, Limited, v. Bowring, Jones & Tidy, Limited, 281 U.S. 515, 50 S.Ct. 400, 74 L.Ed. 1008.

There was no competent evidence whatever introduced in support of the motion to dismiss and vacate the attachment proceeding, nor was there any substantial conformity or compliance with Admiralty Rule 23, of the Canal Zone District Court Rules.[1] The affidavits and exhibits of respondents' counsel as to the lack of jurisdiction, and particularly as to the validity of the alleged

---

[1] Rule 23 of the Canal Zone Admiralty District Court Rules, which is quoted by the majority, is clear to the effect that unless competent evidence of either an "improper practice" or a "manifest want of equity" on the part of libelant be shown, the order to show cause why the attachment should not be vacated will not issue. The rule shows clearly on its face that it is not applicable to the instant proceeding.

520

fraudulent transfer under the laws of Colombia, are highly prejudicial and objectionable as self-serving, hearsay declarations, and should never have been considered by the district court. Christie v. Carlisle, D.C., 11 F.2d 659; Avalon-Presidente Wilson, 1929 A.M.C. 1602; The Hanna Nielsen, D.C., 25 F.2d 984. Furthermore, the copy of the vessel's certificate of registry was competent to show only her nationality, and was not conclusive evidence of ownership. The Navemar, 303 U.S. 68, 58 S.Ct. 432, 82 L.Ed. 667; The Kitty C, D.C., 20 F.Supp. 173.

The record reveals that on March 31, 1948, the original motion to vacate the attachment was presented to the district judge while on leave from the Canal Zone, and that he overruled same in the following order:

"After receiving respondents' memorandum, the Court has diligently investigated the law and procedure herein and, after considering the pleadings, exhibits, the motion and memorandum in support of same, has arrived at the conclusion that the motion of respondents cannot be sustained at this time and on this showing."

Thereafter, on September 20, 1948, the original district judge having retired and his successor having finally been appointed, and the long delay in the proceedings having been occasioned through no fault of libelants, the new judge issued an opinion in which he refused to entertain jurisdiction of the cause, whereupon the libels were dismissed and the attachment vacated. Since the original judge in the above ruling had already considered the question of declining jurisdiction, *as a matter of discretion,* libelants were entitled to rely upon this ruling, and the question of whether he properly exercised his discretion on the original motion was hardly open for review or further consideration by his successor in office. In any event, the case should not go off on the question of discretion, for the reason that the libel is filed principally

on behalf of a citizen of the United States, and it is the unquestionable legal right of such citizen to bring an action in the courts of its own country. Furthermore, the original respondent which entered into this contract of carriage availed itself of the statutes of the United States in the contract itself,[2] and both respondents use the territory and waters of the United States, including the Canal Zone, to carry out their contracts of affreightment. It further appears from the bills of lading that half the rice cargo was designated and marked as the property of "Swift & Company", and thus the carrier knew, or should have known, that it was dealing with a citizen of the United States, as the ultimate owner of fifty per-cent of the entire cargo of the vessel. It makes no difference that libelants severally bought interests in the rice cargo while in transit, as they were nevertheless entitled to safe delivery of their respective property.

There is no merit whatever in the contention that the judgment of the district court is not final or appealable. It becomes manifest that if the holding that no maritime liability is asserted against Compania Del Caribe or the vessel Caribe is permitted to stand, that these libelants will be denied all effective and substantial relief. A personal judgment against a foreign corporation rendered by a Federal Court, where there is no security under court attachment, is practically worthless, for there would be no process enforceable against it. Our jurisprudence is practically uniform to the effect that courts will view the substance and effect of an order, to determine whether it is final and of an appealable nature, rather than the mere form in which it is rendered. The Pesaro, 255 U.S. 216, 41 S. Ct. 308, 65 L.Ed. 592; Baltimore & Ohio R. Co. v. United Fuel Gas Co. et al., 4 Cir., 154 F.2d 545; The Panaghia Kathariotisa, 3 Cir., 165 F.2d 430; Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372; The Attualita, 4 Cir., 238 F. 909.

[2] There is an endorsement on the contract of affreightment as follows:
"This bill of lading shall have effect subject to the carriage of goods by Sea Act of the U. S. A. [46 U.S.C.A. § 1300 et seq.] and the carrier and the ship shall be entitled to all of the rights and immunities set forth in said Act. To the extent that any term of this bill of lading is repugnant to or inconsistent with anything in such Act, it shall be void. * * *"

I take issue with the statement of the majority that "* * * Neither on the hearing, nor on the rehearing completed September 20, 1948, more than six months after seizure, have libelants proved anything at all to support their contention, alleged on information and belief only, that the vessel is really the property of respondent. * * * " Evidently, they ignore the fact that libelants introduced portions of the records in libel proceedings pending in two other district courts of the United States, which in some sort reveal that Walter W. Keene, one of the principal stockholders, and director and manager of both respondent corporations insured the lost M/V Cali not in the name of Compania Transmaritima, her supposed owner, but in his own name; that he personally collected the insurance thereon and presumably kept the proceeds, and otherwise treated both these Latin American Corporations as his personal chattels. This testimony of disinterested parties in other proceedings in the Federal courts of the United States strongly tends to show some connection between the two respondents, and sheds considerable doubt on the good faith of the alleged transfer.[3] Moreover, having charged a fraudulent transfer in their supplemental libel, it was not incumbent upon libelants to prove their case by their pleadings, Rule 23 notwithstanding, but they were entitled to be heard upon the merits.[4]

Evidently, in relegating this case to the Colombian courts for trial, the majority has not considered the possibility that libelants may, by virtue of this decision, be precluded from obtaining the relief sought in that jurisdiction, as well as here. The record reveals that the district court, in granting respondents' motion to vacate this attachment, received into evidence and considered the "opinion" of one Ascanio Mulford, a Panama attorney who is alleged by respondents to have expert knowledge of the laws of Colombia, that the transfer of the vessel Caribe was not fraudulent under the laws of that country. Since Mulford was obviously an attorney paid by respondents, his "opinion" was not competent evidence of foreign law, and should never have been considered by the court. Christie v. Carlisle, D.C., 11 F.2d 659; Avalon-Presidente Wilson, 1929 A.M.C. 1602.

The supplemental and amended libel here charges in no uncertain terms gross fraud, and the district court, by resorting to the convenient expedient of declining to exercise its admiralty jurisdiction, has sent these libelants hence in a summary fashion without their day in court, and remanded them to a doubtful remedy in a foreign jurisdiction. The import of this decision, as precedent, appears to be that when foreign ship owners are about to be haled into our courts to answer for their negligence they may escape liability by a fraudulent transfer and sale of their vessels in a foreign jurisdiction,[5] and thereby effectively oust our Federal courts of admiralty jurisdiction in attachment proceedings. They would thus be permitted to profit from their own wrong, and their vessels would be allowed to continue using our waters and the Canal Zone locks with impunity. I cannot subscribe to any such doctrine.

I conclude that on the record here presented there is no legal basis for the action

---

[3] These other proceedings are apparently not reported, but pertinent excerpts therefrom have been included in the record. They are entitled, Swift & Company, Packers, et al. v. Compania Transmaritima Colombiana,* S. A., et al., in the United States District Court for the Southern District of New York, and Swift & Company, Packers, et al. v. Walter W. Keene,* et al., in the District Court of the United States for the Southern District of Texas.

[4] This is particularly true in view of the incompetent type of proof offered by respondents in support of their motion to vacate the attachment, which the majority admits, is "not of the most satisfactory kind".

[5] It should be remembered that for the purpose of considering the district court ruling on the motion to vacate the attachment, the allegations contained in the libel must be accepted as true. Benevento v. United States et al., D.C., 68 F.Supp. 347; The Illapel, (Schnell et al. v. United States) D.C., 69 F.Supp. 877, 1946 A.M.C. 1499; The Vema, D.C., 27 F.Supp. 679; Sundquist v. Gray, D.C., 48 F.2d 638.

---

* No opinion for publication.

of the district court in dismissing the libel against the respondent Compania Del Caribe, and vacating the attachment against the vessel Caribe. The case should be reversed and remanded for a hearing on the charges as contained in the libel.

I respectfully dissent.

## On Motion for Rehearing.

SIBLEY, Circuit judge.

As to the points urged in the motion for rehearing, it is our view that the process in foreign attachment is issued to secure an appearance in a libel in personam, and if there is no appearance to sequestrate property against which a decree may be enforced if obtained. It is not like a libel in rem to enforce a maritime lien against the property seized. The property here attached was not in the possession or service of the respondent in the libel in personam, and there is no presumption that it was property of the respondent. There can be no greater "want of equity" than to attach the property of another for the in personam debt of the respondent, and Canal Zone Rule 23 provides a summary remedy to obtain release. The Rule was quoted in one of the grounds of the motion for release. It is true no rule nisi was issued against the libelant to show cause, but the motion was entertained and notice given, and three full hearings had. No one objected to the absence of a rule. We have held the evidence was not such, and the proceeding was not such, as to warrant an adjudication of title to the seized ship, and that there was no adjudication of its title, but that the district court was warranted in declining to hold the ship further with no evidence whatever produced by the libelant that she was the property of respondent.

We have not held that the libel in personam was wholly between foreigners, and that jurisdiction over it might be for that reason declined. Jurisdiction has not been declined, but retained. We held only that the question of the organization of the corporation Caribe and its relationship to the corporation Transmaritima, and its liability for the latter's debts, involved transactions in the Republic of Colombia and under its laws, with the witnesses and evidence located there, and that the supplementary libel in personam against Caribe might be dismissed for that reason.

As to the garnishment of Caribe, which was sustained, it has been held that a vessel of a respondent is property which may be reached by garnishment if in the possession of a garnishee. The release of the vessel from attachment does not adjudicate any question that may arise about her under the garnishment. Such questions must await the answer of the garnishee, and there is no right to seize property sought to be reached by garnishment sooner; probably not till final decree establishing the in personam liability of the respondent.

We see nothing to be gained by further argument, and the motion for rehearing is

Denied.

McCORD, Circuit Judge (dissenting).

I am more than ever convinced that a rehearing should be granted, and that this case should be reversed for a full and fair hearing on the charges contained in the amended libel. Throughout this proceeding, my brothers have evidently forgotten the admonition of our elders that Admiralty should act as a court of Equity, and that fraud, whenever sufficiently charged, is a master-key which has from time immemorial unlocked the doors of justice to every aggrieved citizen in the world. For all its seeming wisdom and learned discourse on the law, the majority opinion again manifests a persistent tendency to by-pass these fundamental concepts of right and justice.

The majority here reiterate their view that the process in foreign attachment was issued merely to secure an appearance in the libel proceeding, and that the vessel ought not to remain under attachment after the respondent Caribe has appeared and answered, claiming the vessel as its own. Apparently they ignore the basic proposition advanced in the libel that the steamship Caribe is in reality the property of Transmaritima; that the vessel was attached as the property of Transmaritima; and that in spite of the *attempted* and *fictitious transfer* there is " * * * *no real or actual difference between respondents* Compania Transmaritima Columbiana, S. A., and Compania Colombiana Del Caribe, S. A., and before this Court of Admiralty of the United States they should be held to

be, as they are, *one and the same.* * * *" They further ignore the fact that an in personam decree against Compania Transmaritima would be utterly worthless and unenforceable even if obtained, for this respondent since the date of the attachment has claimed no interest in the vessel, and this court has in effect held that it has no such interest. Thus, while the majority concede the libel is sufficient in personam against Compania Transmaritima, they nevertheless deny libelants the security of the vessel under court attachment as against the respondent Caribe, this in spite of the fact that both corporations are alleged to be identical and the purported transfer wholly fictitious and fraudulent. Moreover, it is without dispute that the steamship Caribe is the only property within the jurisdiction of the court against which a decree would be enforceable. I therefore seriously doubt whether these libelants, who claim to have suffered damages from the loss of their cargo running into the hundreds of thousands of dollars, will ever be justly and adequately compensated by the hollow victory of an in personam judgment against Compania Transmaritima, when that respondent has been held to have no interest in the only security under attachment. Evidently, this is just another way of acknowledging the existence of a right without providing for any effective remedy or relief. I have never favored such decisions, which seem to glorify technicalities of form at the expense of the substance of a right.

I must further take issue with the following statement by the majority:

"The property here attached was not in the possession or service of the respondent in the libel in personam, and there is no presumption that it was property of the respondent. There can be no greater 'want of equity' than to attach the *property of another* for the in personam debt of the respondent * * *." (Italics mine.)

Although the majority claim there has been no adjudication of the title to the seized vessel, and admit that the evidence and hearing was not such as would warrant an inquiry into its true ownership, it nevertheless becomes patent from the above holding that their decision is predicated on the theory that the respondent Caribe is the true owner of the vessel, and that the charges as to the fraudulent transfer and identity of the two corporations are wholly without legal substance and effect. They are actually deciding the case on its merits adversely to libelants without according them the hearing to which they are entitled. Weak excuse to justify this persistent refusal to grant libelants a hearing is made on the ground that they have thus far introduced no evidence to show the vessel is actually the property of respondent Transmaritima. I do not believe it fair or just to thus penalize libelants as derelict in failing to prove their case in the pleadings under the District Court Rules before they have had a reasonable opportunity to do so by testimony at a fair hearing. In the present state of this record, no one can truthfully say whether libelants are entitled to relief against anyone, but surely they are entitled to be heard. The majority, however, claim they are not, and I must confess that the more they explain their position, the more I don't understand it.

To my way of thinking this is an important case, and the issues here decided will touch the business life of our Republic in a vital way. I believe the majority decision is wrong. It seems to me it fails to answer this one vital question in the case: The amended libel charges fraud, and alleges that both these foreign corporations are *one and the same;* that the respondent Caribe has by means of the fictitious and fraudulent transfer taken over the ship that rides at anchor in the Canal Zone; that shortly after the loss of libelants' rice cargo and just before the attachment of this vessel, in an effort to escape liability for their negligence, respondents executed such fraudulent transfer as a subterfuge designed to defraud libelants of their rights. These charges have never been answered, and under the majority decision they will never be answered, for no hearing can be held on them.

I dissent.