LEE (SEMMES v.).   See Case No. 12.652.

LEE (SMOOT v.).   See Case No. 13.133.

LEE (SOMERVILLE v.).   See Case No. 13,172.

---

## Case No. 8,202.

### LEE v. THOMPSON et al.

[3 Woods, 167.] 1

Circuit Court, D. Louisiana. April Term, 1878.

PRACTICE IN ADMIRALTY — GARNISHMENT — CONFLICTING CLAIMS — SUBMISSION OF ISSUES OF FACT TO REFEREES—EFFECT OF THEIR DECISION —EVIDENCE BEFORE COURT ON APPEAL.

1. It is according to the course and practice of courts of admiralty, where a libelant has obtained a judgment in personam against the respondent, to attach a debt due the latter from a third person to satisfy the decree.

2. A court of admiralty has power to decide between conflicting claims to property seized by attachment or on execution.

---

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

3. Where a party claims property attached by a court of admiralty to satisfy its judgment, and submits his claim to that court, he is bound by its decision.

4. Until the passage of the act of congress, approved Feb. 16, 1875 [18 Stat. 315], "to facilitate the disposition of cases in the supreme court of the United States, and for other purposes," a court of admiralty had strictly no power to try issues of fact by a jury; but it might, either on its own motion or at the instance of the parties, submit any question of fact to commissioners or referees for their opinion and advice. Their decision, however, would not, like the verdict of a jury, be conclusive of the facts, which would finally have to be submitted to the decision of the court.

[Cited in The Empire, 19 Fed. 560.]

5. In a case where the court of admiralty submitted issues of fact to a jury, and the record showed that the court was controlled by the findings of the jury, without consideration of the evidence, *held*, that the proceeding was irregular and illegal, and if the case were simply one to be affirmed or reversed, it would be reversed.

6. But where, notwithstanding such error, all the evidence is before the appellate court, that court will consider it and render such judgment as the evidence warrants.

[Appeal from the district court of the United States for the district of Louisiana.]

The libelant [Hamilton L. Lee] having obtained a judgment in personam against the respondents [James M. Thompson and others], issued an execution thereon, which was returned that no property could be found. Thereupon the libelant filed a supplementary petition or libel, alleging that Edward Conery and J. H. Menge were indebted to the respondent Thompson on bond for more than the amount due on the judgment, and praying an attachment of so much of said debt as would satisfy the judgment. Conery and Menge being cited to answer this allegation, admitted their indebtedness to Thompson, which had been converted into judgment; but alleged that Thompson had transferred the judgment to Doctor Vincent Boagni, and that they had been duly notified of the transfer. The libelant traversed the assignment, averring that it was simulated, fraudulent and void. Whereupon Conery and Menge, alleging that they were not interested in this question, but were mere stakeholders, prayed that Boagni might be cited to appear and defend his interest. An order for that purpose was made by the court, and Boagni appearing, set forth the act of assignment, alleged its bona fides, but excepted to this mode of proceeding, to try the validity of his title, insisting that the proceeding should be a direct action where he would have a right to a trial by jury. The court then made an order that the matter be tried by a jury, and it was tried accordingly; and the jury rendered a verdict that the transfer from Thompson to Boagni was a simulated transfer. Judgment was thereupon rendered that the libelant recover the amount of his judgment against Conery and Menge. From this judgment Boagni has appealed.

Thomas Hunton, for libelant.
B. Egan, for respondent.

BRADLEY, Circuit Justice. I. The first question on the appeal is, whether the district court had power to attach the debt due from Conery and Menge to Thompson in satisfaction of the judgment. By the process act of 1792, § 2 (1 Stat. 276), the forms of writs, executions and other process, and the forms and modes of proceeding in suits at common law, were required to be the same as then used in the state courts, and in suits in equity and admiralty according to the principles, rules and usages which belong to courts of equity and admiralty respectively; but subject to such alterations and additions as the said courts should deem expedient, or to such regulations as the supreme court of the United States should think proper from time to time by rule to prescribe to any circuit or district court concerning the same. The supreme court did not adopt any general rules on the subject until long afterwards, and the practice in admiralty, including the forms of writs and executions was that which prevailed in the states respectively at the time of the adoption of the constitution, as modified and regulated from time to time, by the district courts respectively. [Mauro v. Almeida] 10 Wheat. [23 U. S.] 489, 490. In 1828, congress passed an act further to regulate process [4 Stat. 278], but it was not extended to courts established in Louisiana.

In 1842, congress passed a further act on the subject (5 Stat. 516), by the 6th section of which plenary power was given to the supreme court to prescribe and regulate the forms of writs and other process to be used and issued in the district and circuit courts, and the forms and modes of framing and filing libels, bills, answers and other proceedings and pleadings, in suits at common law, or in admiralty and in equity, etc.. and generally to regulate the whole practice of those courts. Under the authority given by this act the supreme court soon afterwards promulgated general rules for the practice in admiralty proceedings, which are still in force so far as not modified by subsequent legislation or amendment. By the 21st of these rules it was declared, that on decrees for the payment of money, the libelant might, at his election, have an attachment to compel the defendant to perform the decree, or a writ of execution in nature of a capias, or a fieri facias against goods and chattels, and for want thereof he might arrest the person. After the abolition of imprisonment for debt this rule was amended and now declares that, in all cases of a final decree for the payment of money, the libelant shall have a writ of execution in the nature of a fieri facias, commanding the marshal or his deputy to levy and collect the amount thereof out of the goods and chattels, lands and tenements, or other real estate of the defendant or stipulators. This must be regarded as the paramount law regulating the subject of executions on judgments in admiralty for the payment of money. It is true the act of 1872 (17 Stat. 196) relating to the practice of the courts (which has been generally incorporated into the Revised Statutes), requires that the practice, pleadings and forms and modes of proceeding in the circuit and district courts, in all civil causes, other than equity and admiralty causes, shall conform to those of the state courts respectively, including the remedies for reaching the property of the debtor upon or supplementary to execution.

But the forms of mesne process and the forms and modes of proceeding in the circuit and district courts in equity and admiralty, are still to be conformed to the principles, rules and usages which belong to courts of equity and of admiralty, respectively, except as expressly modified by statute or by rules of court made in pursuance thereof, subject, however, to alteration and addition by the said courts, and to regulation by the supreme court; the paramount authority of the latter court being still continued. See Rev. St. U. S. §§ 913-918. Assuming it to be true, therefore, that the process of execution to be issued on money judgments in the admiralty, according to rule 21, is to be a writ in the nature of a fieri facias, leviable upon the goods and chattels, lands and tenements or other real estate of the defendant or stipulators, the question remains as to the manner in which such writ is to be executed, and as to the course to be pursued for obtaining satisfaction of the judgment in cases where the writ is ineffective for want of leviable property. Is there anything in the statutes, or in the rules of the supreme court, which would prevent the district court from exercising its power to reach rights and credits of the defendant within its jurisdiction in a state where that species of property may be thus pursued in its own courts? Is there anything to prevent the district court itself from adopting, in this regard, the practice of the state courts? The power of the court to reach the rights and credits of the respondent in certain cases is unquestionable. By the second rule in admiralty, the court is authorized in suits in personam, to issue a warrant to arrest the person of the defendant, with a clause therein, if he cannot be found, to attach his goods and chattels; or, if such property cannot be found, to attach his credits and effects to the amount sued for in the hands of garnishees named therein; and of course the property so attached may, in default of appearance, be sold to satisfy the debt. This is in strict accordance with the ancient course in admiralty proceedings, and has been confirmed by the decisions of the supreme court. See Manro v. Almeida, 10 Wheat. [23 U. S.] 473; Atkins v. Disintegrating Co., 18 Wall. [85 U. S.]

303; and rule 37 in admiralty. This shows that the power of the court is competent to reach this species of property (rights and credits) and to apply it in satisfaction of the libelant's demand. Ordinarily, the respondent, on appearing, is compelled to give sufficient security by stipulators for the payment of the judgment. But where this is not done, and he remains in contumacy, and no corporeal property can be found to answer the execution, there seems to be no good reason why the court should not have power by a supplementary proceeding to cause his rights and credits to be seized by attachment or garnishment, where property of that kind is subjected to the payment of debts by the local law.

In Louisiana, rights and credits, as well as corporeal movables, are liable to seizure on fieri facias. Such effects, therefore, are subjected to execution in ordinary cases at law, in the circuit and district courts of the United States. So that the proceedings instituted in this case for reaching this species of property are neither strange nor unusual, nor contrary to the customs and usages of the district, but entirely in harmony therewith. A rule of the district court of long standing (rule 42) directs that on judgments in admiralty in personam, a writ of execution may issue against the property of the judgment debtor in the same manner as in ordinary civil cases. This rule is in entire harmony with the rule 21 in admiralty, and would probably authorize a seizure of rights and credits under the writ of fieri facias itself. But the course adopted in this case, of garnisheeing the debtors of the defendant and citing them to answer interrogatories as to their indebtedness, instead of proceeding directly under the fieri facias, cannot be complained of. It was more in accordance with the modes of proceeding proper to the district court, as a court of admiralty, and was more favorable to the garnishees than a direct seizure would have been. I think there was no error in attaching the debt in question for the purpose of procuring satisfaction of the libelant's judgment.

II. The next subject to be considered is, the trial of the validity of the transfer from Thompson to Boagni of the claim against Conery, Menge and others. A regular transfer was produced, which, under the laws of Louisiana, conveyed and transferred to Boagni all the right, title and interest of Thompson. The libelant alleged that this was a simulated transfer. Boagni, as has been shown, being cited to sustain it, alleged it to be bona fide and for good consideration, and excepted to its validity being tried in a proceeding in which he could not have a trial by jury. A jury was ordered, and the trial went on between the libelant and Boagni, and a verdict was given that the transfer was a simulated one. Now, first, had the district court, sitting in admiralty, power to try this question? Secondly, if it had, was the mode of trial

valid and lawful, so as to bind Boagni? The only direct mode of attacking the bona fides of such a transfer in states where the common law prevails would have been by bill in equity to set it aside as being simulated and fraudulent; in Louisiana, by the revocatory action. But the plaintiff in a judgment, when he finds or believes that his debtor has made a simulated transfer of his property, may treat it as null and no transfer; and require the property to be seized, and leave it to the transferee to take such course as he sees fit to vindicate his right. It is so laid down in 1 Hen. Dig. tit. "Execution," v (a), (3), e, p. 619, as the result of the authorities, which are there referred to, but which I shall not take up time to quote. When the seizure is made, the party affected thereby and claiming the property may intervene or not, as he sees fit. That this is the Louisiana law may be seen by a reference to the same, 2 Hen. Dig. tit. "Pleading," viii (d), (2), p. 1179. If he does intervene, of course he is bound by the decision. Now, although a court of admiralty has no power, by a direct and independent proceeding, to investigate the validity of a man's title to his property, except in petitory suits relating to the title or right of possession of ships or other maritime subjects; yet, as incidental to its general jurisdiction, and for maintaining the same, it has plenary power to decide, and frequently does decide, conflicting claims to property. Without such power its jurisdiction would often be defeated.

In all cases of libels in rem, when a party appears as claimant, the libelant may contest the truth and validity of his claim. Judge Conkling, in his treatise on Admiralty, correctly says: "The libelant has a right, by a suitable exceptive allegation, to contest the proprietary interest of the claimant, and to have it formally decided." 2 Conkl. Adm. p. 205. The power of the court to entertain such contestations upon all seizures made under its authority would seem to be indispensable. It is as necessary that it should have power to decide between conflicting claims to property seized by attachment or on execution as in seizures upon libels in rem. In Benedict's Admiralty (section 459) it is said: "If the property of a third person be attached, he may intervene by claim, for the protection of his property." It seems to me that the proposition can hardly be questioned. Without power to try the validity of conflicting claims, the court could not enforce its judgments for the payment of money. They could always be defeated by fraudulent and simulated transfers. If a third party comes in to claim the property which has been seized, he must submit himself to the jurisdiction of the court. If he does not choose to do this, either voluntarily or upon citation, he must, at his own risk, seek such other remedy as the law may afford him. Perhaps he might sue the marshal for damages, or where a credit is seized, as in this

case, perhaps he might test his claim by further legal proceedings against the garnishees. Whatever remedy he may have when he absolutely declines the jurisdiction of the district court, he loses it by submitting to that jurisdiction. In this case Boagni, although he excepted to the proceeding, nevertheless, after he was allowed a trial by jury, he submitted to it, and went before the jury in litigation of his right. Having failed, however, he now insists that the trial by jury was an illegal mode of trial in the admiralty court, and an unauthorized proceeding.

It is undoubtedly true that a court of admiralty has no power to try causes by jury; but there is no reason why it should not, either on its own motion or at the desire of the parties, submit any question of fact to commissioners, or referees, for their opinion and advice, and the number of these commissioners may be twelve as well as any other number. But their decision, after all, is not like the verdict of a jury, conclusive upon the facts; and no bill of exceptions can be entertained, and no writ of error can be brought to consider such exceptions. The matter must be finally submitted to the judgment of the court, and the court will not be concluded by the verdict, although it may be aided in coming to a conclusion. A state of things precisely similar to this took place in the case of Dunphy v. Kleinsmith, reported in 11 Wall. [78 U. S.] 610. There a creditor's bill was filed in a territorial court to set aside a fraudulent assignment made by the debtor, and an issue was made for trial by a jury. The trial was had and a verdict given, and the court gave judgment upon the verdict, as it would have done in an ordinary jury trial at law, without looking at the evidence or passing upon the facts of the case. The supreme court held that this was not a legal mode of proceeding, and reversed the decree. I should infer from the record in this case that a similar course was pursued, and if it were simply a case to be affirmed or reversed, I should feel compelled to send it back for reconsideration. For whilst the district court might very properly have given much consideration and weight to the finding of the jury, it was bound to come to a conclusion of its own on the facts, and to disregard the verdict if, in its opinion, it was not supported by the evidence. But as, upon this appeal, all the evidence, as the parties have conceded, is contained in the record, and as the case is before this court for retrial, it can do what the district court should have done, if it did not.

Accordingly, I have attentively read the evidence, and whilst Thompson and Boagni both swear that the assignment was made for the consideration of an indebtedness which Thompson had assumed to pay to Boagni on behalf of one Mrs. McHusbands, in 1866 or 1867, and was absolute and unconditional, it appears from the evidence of Boagni that this debt of Mrs. McHusbands was secured by a note with a mortgage, and the property mortgaged not being supposed to be of sufficient value to protect him (Boagni), Thompson secured him still further by the transfer of the claim in question. These statements are inconsistent with each other. An absolute and unconditional transfer is very different from a transfer by way of collateral security. Then there are other circumstances that are calculated to raise a doubt in the mind with regard to the bona fides of the transaction. Both parties say that a former transfer had been made, but when wanted no record of it could be found; and, therefore, a second act of transfer was passed on the 5th of May, 1875, and still another on the 15th of May, 1875. The last act recites that the first transfer had been made several years before. Why were so many successive transfers needed or required? What happened in 1875 that made the transfer to be wanted? The record discloses the fact that the claim, which was a proceeding against the steamboat Great Republic, was about passing into judgment, and the further fact that Thompson informed Boagni that there was a judgment against him in New Orleans, and that he thought the judgment of Thompson against the Great Republic might be garnisheed. Does it not seem most probable that the act of assignment was wanted for the purpose of defeating any such garnishment, especially as Thompson had declared that he owed the libelant nothing, and that if he got a judgment it would be by false swearing. It is to be observed also that no explanation is given of the manner in which, or reason why, Thompson assumed the debt of Mrs. McHusbands, in 1866 or 1867; and Thompson declined to answer the fifth direct interrogatory, inquiring whether he knew or could set forth any other matter or thing which would be of advantage or benefit to the parties at issue, or material to the subject or to the matters in question; and also refused to answer the eleventh cross-interrogatory, which inquired whether he had any property either in his own name or that of other persons; and Boagni also made no answer to the said fifth interrogatory. It is further to be observed that Boagni never took any care of or gave any attention to the suit against the Great Republic, but gave power to Thompson to attend thereto, who still managed and looked after it with the same interest and attention as if he were the proprietor. Putting all these circumstances together, and others which the evidence discloses, it does not seem at all strange that the jury should have come to the conclusion they did, and I am unable to say that it was not supported by the evidence; and as this was the tribunal before which Boagni desired to go, I do not feel disposed to question the justice of the verdict. On the whole matter, it seems to me that the decree of the district court should be affirmed.