**Sherkate Sahami Khass RAPOL (Rapol Construction Co.), Plaintiff,**

v.

**HENRY R. JAHN & SON, INC., Defendant.**

**HENRY R. JAHN & SON, INC., Defendant and Third Party Plaintiff,**

v.

**LUFKIN INDUSTRIES INC., Third Party Defendant.**

**No. 76 Civ. 4919 (IBC).**

United States District Court, S. D. New York.

May 31, 1979.

Hill Rivkins, Carey, Loesberg & O'Brien, New York City, for plaintiff; Caspar F. Ewig, New York City, of counsel.

Frederick Block, New York City, for defendant and third-party plaintiff.

Rogers, Hoge & Hills, New York City, for third-party defendant; Frank H. Gordon, New York City, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

Rapol, an Iranian corporation, brought suit in November, 1976 against Jahn, a New York corporation, for alleged breach of contract. Rapol claims that it had contracted with Jahn for the delivery of six Lufkin model TD–27 underbody frames, for which $76,080.00 had been paid upon presentation of bills of lading; but that the goods which later arrived did not meet the description and quality of those ordered.

Secondly, Rapol alleges that upon receipt of the goods, it notified Jahn of its rejection, but that Jahn failed to cure or to accept re-tender, causing Rapol loss of profits and incidental and consequential damages in the amount of $250,000.00.

Thirdly, Rapol claims that Jahn knew Rapol would purchase other goods to be used in conjunction with the underbody frames, which were useless in light of the alleged defects in the goods shipped by Jahn. Thus, Rapol claims consequential damages on this count in the amount of $250,000.00.

Jahn, as third-party plaintiff, has sued Lufkin Industries, Inc., as third-party defendant, for costs and damages, alleging that Lufkin shipped the goods directly to Rapol, without inspection by Jahn, knowing the goods were defective.

On February 2, 1977, an order was entered compelling Rapol to post security for costs in the amount of $750.00. That sum was posted on February 25, 1977.

On June 8, 1977, a stipulation and order was entered providing that Jahn would proceed with discovery by interrogatory, on the

understanding that Jahn would have the right to depose Rapol's agent, Mr. Entezam, if answers to the interrogatories proved unsatisfactory.

On April 5, 1979, Jahn moved, under Rule 2, Civil Rules of the District Court for the Southern District of New York, for an order requiring Rapol to increase security for costs from $750.00 to $5,000.00. Jahn claims it has incurred substantial expense in deposing Lufkin, and is still attempting to get Mr. Entezam's deposition. Due to the situation in Iran, Rapol's agent, Mr. Entezam, is now Deputy Premier. Jahn claims that this fact casts doubt on the continued existence and viability of Rapol, therefore it would be appropriate to increase the security in this "extensive and wide-ranging lawsuit."

Rapol's attorney has submitted an affidavit in opposition, stating that it would be difficult to get additional security from Iran now, and would put the action in suspense. Admittedly, the only expense which is a taxable cost, incurred so far by Jahn, is the examination of Lufkin, the transcript of which cost $242.40.

Rapol's attorney admits that Entezam is now Deputy Premier of Iran, but maintains that it can not be said Rapol no longer exists. Rapol's attorney alleges to have personally spoken with another officer of Rapol, who assures him that Rapol is still in existence. Finally, Rapol's position is that there is no unusual complexity in this case—it is merely a suit for non-conforming delivery and breach of contract. In sum, Rapol claims that an increase in security is unwarranted and unnecessary.

Lufkin, the third-party defendant, has submitted an affidavit taking no position as to any increase in the amount of security for costs posted by Rapol.

Jahn's reply affidavit admits that only $242.40 in taxable costs has been incurred so far, but insists that other costs are sure to be incurred, e. g. the costs of deposing Entezam when he becomes available, if ever; and the costs of the trial transcript.

## APPLICABLE LAW

This civil action was brought in the Federal Court of the Southern District of New York pursuant to diversity jurisdiction, 28 U.S.C. § 1332(a)(2), as plaintiff is a citizen of a foreign state and defendant is a citizen of New York.

The Federal Rules of Civil Procedure, which normally govern such suits, do not have any provision for security for costs. However, Rule 2 of the Civil Rules for the Southern District of New York provides that:

> The court, on motion . . . may order any party to file an original bond for costs *or additional security for costs* in such amount and so conditioned as it may designate.

Thus, the granting of additional security appears to be completely discretionary with the District Court. An interesting question arises as to whether the local rules of a federal court sitting in diversity jurisdiction override relevant state law provisions on point, where the issue in question has been held to be "not merely procedural." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 555, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Erie R. R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

This question is relevant here, where there is no national federal policy on the issue of security for costs, whereas New York State has codified quite explicit rules of law on the subject. CPLR § 8501 *et seq.*

Rules regarding security for costs have been held to be substantive, which would invoke the *Erie* principle that the federal courts sitting in diversity jurisdiction defer to state rules in the absence of a compelling federal rule.[1]

---

1. "When sitting in diversity of citizenship jurisdiction . . . a federal court has the responsibility . . . of applying the rules of 'substantive' law of the state in which the court is situated . . . so as to prevent the outcome of the litigation from turning on whether the plaintiff chooses to litigate in a state or federal court.

Obviously, in an instance in which a plaintiff would be required by CPLR § 8501(a) to give

As stated in *Cohen v. Beneficial Industrial Loan, supra,* at 556, 69 S.Ct. at 1230: "We do not think a statute which so conditions the [plaintiff's] action can be disregarded by the federal court as a mere procedural device." Were the federal courts to adopt a uniformly different policy from that of the state courts, it might encourage forum-shopping by either increasing or decreasing the attractiveness of one court over another—in such a way as to affect the very outcome of the litigation.

■ We hold, however, that the federal court is not bound to follow state rules on security for costs where a federal local rule granting discretion is applicable. We may, nonetheless, look to these rules for guidance in determining the standards to be applied to this motion for an increase in security. CPLR § 8501.01 gives us a general framework within which to approach this issue:

> The basic functions of a provision requiring a plaintiff to give security for costs are to assure that a successful defendant will be able to recover his statutory costs from the plaintiff, to protect certain classes of litigants from irresponsible conduct by others, and, tangentially, to discourage the commencement of lawsuits designed to harass rather than redress a legal wrong. . . .

> Since one of the basic tenets of our system of administering justice is that the right to bring a lawsuit should not be impeded, except when a strong public policy indicates that it is necessary to do so, in most states security for costs is mandatory only in cases in which the risk is high that the defendant may not be able to recover his costs without difficulty—i. e., cases involving . . . foreign corporations not licensed to do business in the jurisdiction.

■ Thus, together with the three basic policies enumerated above for protecting defendants by imposing or increasing security for costs, the court may balance the hardship and detriment to a plaintiff seeking redress in the federal courts before deciding whether or not to impose such a burden.

The New York CPLR grants security for costs *as of right* to a defendant sued in the jurisdiction by a foreign corporation, not licensed to do business in New York. Rapol is such a plaintiff, and within the discretion of this Court was required to post security of $750.00.

■ In order to determine whether such security should be increased, presumably the same considerations generally applicable to the imposition of security in the first place, should apply.

1. *Recovery of costs.* Defendant has claimed, so far, costs of only $242.40. This amount is amply covered by the $750.00 already posted. Future costs likely to be incurred, from which defendant allegedly needs protection, are at this point speculative at best. Defendant admits that the deposition of Mr. Entezam may never occur. Furthermore, the issue of trial, and the accompanying costs, is at this time so distant and speculative that no substantial claim can be made out on that basis.

2. *Protection from irresponsible conduct.* Certainly, the unstable situation in Iran gives this defendant reason to be uncertain as to the ultimate outcome of this suit. While there may be delay and poor communications for some time, there is no substantial reason to believe that defendant now needs special protection in this case.

3. *Harassment.* A final statutory purpose for posting security is to prevent the commencement of lawsuits solely for harassment. This position has already been largely obviated due to the plaintiff's original posting of $750.00. There is no evidence of frivolity or harassment in this suit; plaintiff and defendant were apparently cooperating fairly well until the present unrest in Iran created some difficulty with defendant's deposing Mr. Entezam. It should also be noted that Rapol had paid

security and could not or refused to do so, a difference in outcome would result if a New York federal court decided, as a matter of discretion . . . that security need not be posted." 85 N.Y.Civil Practice § 8501.07.

Jahn in full on the contract, prior to commencement of the lawsuit. We cannot see that Jahn needs any further protection.

In sum, an analysis of relevant (if not controlling) bases of state statutory law regarding the posting or increase of security for costs, in light of the facts in this case as presented in the motion papers, reveals no compelling need for an increase in the amount of security.

Motion denied.

So ordered.