**ATLANTA SHIPPING CORPORATION, INC., Plaintiff-Appellant,**

v.

**CHEMICAL BANK, Defendant-Appellee.**

**No. 125, Docket 86–7435.**

United States Court of Appeals, Second Circuit.

Argued Sept. 22, 1986.
Decided April 29, 1987.

Michael P. Arra, New York City (Stephen Hochhauser, Rich, Lillienstein, Krinsly, Dorman & Hochhauser, P.C., New York City, on the brief), for plaintiff-appellant.

William H. Schrag, New York City (Richard S. Toder, Andrew D. Gottfried, Zalkin, Rodin & Goodman, New York City, on the brief), for defendant-appellee.

Before VAN GRAAFEILAND, MESKILL and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal concerns primarily issues of appellate review and admiralty jurisdiction. The first issue is whether a plaintiff who suffers the dismissal of some but not all of his claims and invites dismissal of his entire suit rather than post a bond imposed as a condition of pursuing the one claim not originally dismissed may obtain appellate review of the rulings that preceded the order to post the bond. The second issue is whether admiralty jurisdiction is available to consider an equitable claim to set aside a transfer to a creditor allegedly made to frustrate payment of a maritime debt where admiralty jurisdiction was not invoked with respect to the underlying debt. These issues arise on an appeal by plaintiff-appellant Atlanta Shipping Corporation, Inc. ("Atlanta") from a judgment of the District Court for the Southern District of New York (Gerard L. Goettel, Judge) dismissing all claims against defendant-appellee Chemical Bank ("Chemical"). 631 F.Supp. 335 (S.D.N.Y.1986). Judge Goettel initially dismissed Atlanta's admiralty claims, dismissed most of Atlanta's state law claims, permitted Atlanta to replead a state law claim under N.Y.Debt. and Cred.Law § 276 (McKinney 1945) ("DCL"), and left standing a state law claim under N.Y.Bus.Corp.Law § 720 (McKinney 1986) ("BCL"). He also ordered Atlanta to post a $10,000 bond as security for costs. Upon Atlanta's refusal to replead or post the bond, the entire action was dismissed. For reasons that follow, we hold that Atlanta may secure appellate review of rulings made before it elected not to pursue the one undismissed claim, that all of those rulings were correct, and that final judgment was properly entered. We therefore affirm.

Background

In March 1976, Robert Waldron, Frank Visconti, DIC Concrete Corporation ("DIC"), and Underhill Construction Corporation ("Underhill") formed International Modular Housing, Inc. ("IMH") with $125,000 in invested capital for the purpose of purchasing modular homes in the United States for sale in Saudi Arabia. In June 1976, IMH and Atlanta, a Liberian corporation, entered into a shipping contract (the "Liner Booking Note") under which Atlanta agreed to carry 560 mobile homes from the United States to Saudi Arabia in four voyages in exchange for $1.54 million per voyage to be paid in installments.

To finance IMH, DIC and Underhill each borrowed $1.5 million from Chemical in October 1976, pledging their assets as security. DIC and Underhill lent the $3 million to IMH, receiving notes and a chattel mortgage on 103 of IMH's modular homes. In December 1976, Chemical loaned $3 million to IMH, with DIC and Underhill acting as guarantors. On January 10, 1977, Chemical loaned IMH an additional $3 million, guaranteed by DIC and Underhill, which was used to repay DIC's and Underhill's $1.5 million direct loans from Chemical. After these transactions, IMH owed Chemical $6 million, guaranteed by DIC and Underhill. As of January 1977, IMH had total debts of $14 million (including the $6 million owed to Chemical) and $125,000 in equity.

The first of the four contracted voyages with Atlanta was completed and paid for as provided by the Liner Booking Note. On January 25, 1977, IMH defaulted on a $385,000 payment due as the last installment on the second voyage. On February 9, 1977, IMH defaulted on the first installment for the third voyage, bringing its level of indebtedness to Atlanta to $1,067,-

393.56. On February 22, 1977, IMH and Atlanta entered into a "Credit Agreement" whereby Atlanta obtained title, possession, and a security interest in 141 homes then aboard an Atlanta ship in exchange for a promissory note deferring payments under the Liner Booking Note. On March 23, 1977, the date on which the first payment was due under the Credit Agreement, IMH commenced an action in the New York Supreme Court to enjoin enforcement of the agreement, claiming that it was entered into under economic duress. Atlanta removed that action to the District Court for the Southern District of New York, commenced a separate action against IMH in the Southern District of New York to enforce collection of the promissory note, and served notice of arbitration upon IMH to enforce collection of the amounts due to Atlanta pursuant to the Liner Booking Note. These actions resulted in protracted arbitration proceedings and litigation between IMH and Atlanta. On September 30, 1982, and March 14, 1983, the District Court confirmed arbitration awards in favor of Atlanta of $2,012,500 and $1,753,572, respectively, most of which remains unsatisfied.

On December 11, 1984, Atlanta commenced the present action against Chemical, seeking recovery from Chemical of IMH's repayments as well as punitive damages and attorney's fees. The suit challenges Chemical's receipt of full repayment of principal and interest on IMH's $6 million loan during the period from January 1977 to March 1980. Atlanta alleges the following background facts. IMH encountered difficulty in selling its modular homes in Saudi Arabia and, as a result, found itself unable to service its large debt. Nonetheless, IMH forestalled default on its Chemical loans through financial assistance from DIC and Underhill and by Chemical's frequent renewals and extensions of the due dates of IMH's obligations to the bank. On February 7, 1980, Chemical forwarded a renewal notice to IMH extending its loans for sixty days and requesting immediate payment of $205,381 to cover interest to the extension date. IMH defaulted on this interest payment. In early March 1980,

IMH sold its remaining inventory of modular housing in Saudi Arabia and deposited the proceeds into its Chemical account. On March 12, 1980, Chemical, exercising its right of setoff, debited IMH's account for $2,150,000. On March 13, 1980, Chemical notified DIC and Underhill of the setoff and demanded, pursuant to the guarantees, repayment of the remaining outstanding principal balance of $600,000 and accrued interest of $247,510.07. On April 3, 1980, DIC and Underhill paid the balance of IMH's debt. Throughout this period of repayment, Chemical monitored IMH's financial condition and was aware of IMH's obligations to other creditors, including Atlanta.

Atlanta's suit alleges numerous grounds on which IMH's repayments to Chemical were illegal. The following alleged violations may be gleaned from Atlanta's rather imprecise amended complaint: that IMH's loan repayments to Chemical represented fraudulent conveyances in violation of DCL §§ 273, 273–a, 274, 275, 276 (McKinney 1945 & Supp.1987), the common law of New York, and the law of admiralty; that the transfer to Chemical of the proceeds from the sale of the 141 homes securing the Credit Agreement between IMH and Atlanta violated N.Y.U.C.C. Art. 9 (McKinney 1964 & Supp.1987); that Chemical violated BCL §§ 510, 719, 720 (McKinney 1986); that Chemical received preferential transfers in violation of the common law of New York and the law of admiralty; and that Chemical aided and abetted fraudulent conveyances by directors and/or stockholders of IMH, improper transfers of assets by directors of IMH in violation of BCL § 720, and distributions to stockholders in violation of BCL §§ 510, 719.

Chemical moved for dismissal of the amended complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. Chemical also moved for partial summary judgment with respect to certain claims, a more definite statement, and an order requiring Atlanta to furnish security for costs. On March 25, 1986, Judge Goettel issued an opinion finding that diversity jurisdiction

existed and dismissing admiralty claims for lack of jurisdiction. Pursuant to Fed.R. Civ.P. 12(b)(6), he dismissed all other claims except the claim under BCL § 720. In addition, Judge Goettel required Atlanta to replead its claim under DCL § 276 with particularity and to post a $10,000 bond as security for costs, both steps to be taken within thirty days.[1] Judge Goettel denied Atlanta's request to certify the dismissal of the admiralty claims for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b) (1982).

Atlanta did not comply with the District Court's orders and instead on April 23, 1986, filed an appeal, which was dismissed on June 3, 1986, for lack of appellate jurisdiction. On April 24, 1986, Atlanta's counsel wrote to Judge Goettel stating that Atlanta chose not to "post security at this time and because it may not serve an amended complaint without posting such security, all claims of Atlanta against Chemical have been effectively dismissed as of April 24, 1986." Atlanta requested Judge Goettel to enter judgment because "Atlanta wishe[d] to pursue its appeal rather than try this case under principles of law enunciated by the Court." In view of this representation and Atlanta's failure to post the required $10,000 bond, Judge Goettel on May 6, 1986, entered final judgment dismissing Atlanta's complaint with prejudice pursuant to Fed.R.Civ.P. 41(b).

## Discussion

At the outset, we must decide the threshold question of which rulings of the District Court are reviewable on this appeal. Atlanta seeks review of virtually all aspects of Judge Goettel's order of March 25, including the dismissal of most of its claims. Chemical contends that our scope

of review is much more limited. It suggests that by failing to post the $10,000 bond Atlanta forfeited its right to challenge all of the March 25 rulings except the ruling requiring a bond to be posted. If we find as a threshold matter that the District Court acted within its discretion in ordering that the bond be posted, Chemical contends that we must affirm the final judgment dismissing all claims.

■ We disagree with Chemical's view that only the propriety of the bond requirement is reviewable. Appellate procedure may be somewhat complex and may sometimes confront litigants with unpleasant choices, but it does not require results as harsh as those for which Chemical contends. On March 25, when Judge Goettel ordered all of Atlanta's claims dismissed except the claim under BCL § 720, no final judgment was then entered, and the order was not appealable.[2] As an interlocutory order, it could have been appealed only if certified under 28 U.S.C. § 1292(b), a step Judge Goettel declined to take. Atlanta then confronted a choice. It could post the $10,000 bond, replead its claim under DCL § 276 and pursue its claim under BCL § 720; or it could decline to post the bond, invite entry of a final judgment dismissing all claims, and appeal that judgment. Atlanta chose the latter course. As Atlanta made clear in its April 24 letter to Judge Goettel, its choice was deliberate. It did not wish to bear the expense of two trials, a result it contemplated if it pursued the BCL § 720 claim to a verdict, appealed from a final judgment entered after trial, secured a reversal of the dismissal of its other claims, and then went to trial on those claims.

In considering what aspects of the March 25 order are reviewable on the appeal from

---

1. The dismissal of the DCL § 276 claim with a right to replead and the dismissal of all the other DCL claims had the effect of dismissing Atlanta's claim under DCL § 276-a for attorney's fees. Since the claim under DCL § 276-a is ancillary to the other DCL claims, it stands or falls with their disposition and needs no separate consideration.

2. In referring to Atlanta's causes of action under maritime law and the various provisions of New

York law as "claims," we do not mean to suggest that each is a "claim" for purposes of Fed.R. Civ.P. 54(b), permitting certification for appeal of a final order disposing of fewer than all of the claims in a complaint. For Rule 54(b) purposes, Atlanta has only a single claim for damages; it has several legal theories for recovery. *See Perma Research and Development Co. v. Singer Co.,* 410 F.2d 572, 575 n. 10 (2d Cir.1969).

the final judgment Atlanta chose to have entered, it will be helpful to distinguish three distinct rulings comprehended by that order. First, Judge Goettel dismissed outright all of the claims except the claims under DCL § 276 and BCL § 720. Second, he dismissed the DCL § 276 claim but granted leave to replead. Third, he required the posting of a bond as a condition of proceeding both with a repleaded DCL § 276 claim and the undismissed BCL § 720 claim.

■ We consider first the claims dismissed outright. If Atlanta had abandoned its claims under DCL § 276 and BCL § 720, the outright dismissal of the other state law claims and the admiralty claims would be reviewable. A party who loses on a dispositive issue that affects only a portion of his claims may elect to abandon the unaffected claims, invite a final judgment, and thereby secure review of the adverse ruling. *See* 9 *Moore's Federal Practice* ¶ 110.13[1] at 153 (1986); *cf. United States v. Procter & Gamble Co.*, 356 U.S. 677, 680–81, 78 S.Ct. 983, 985–86, 2 L.Ed.2d 1077 (1958). He is not obliged to try to completion a claim he is willing to abandon as the price of securing review of the dismissal of the claims he deems important. *Empire Volkswagen Inc. v. World-Wide Volkswagen Corp.*, 814 F.2d 90 (2d Cir. 1987). *Cf. Estate of Young v. Williams*, 810 F.2d 363 (2d Cir.1987) (on appeal from judgment entered after defendant elected not to attend trial, defendant entitled to obtain review of prior adverse ruling rejecting *res judicata* defense). Had Atlanta abandoned the DCL § 276 and the BCL § 720 claims, it clearly could have sought review of the outright dismissal of all its other claims. But Atlanta has not unconditionally abandoned these two claims. Whether its right to review of its other claims has thereby been lost cannot be determined until we consider the circumstances under which Atlanta seeks review of these two claims.

■ The ruling dismissing the DCL § 276 claim with the right to replead would clearly be reviewable if it were the only claim in the lawsuit. When a complaint is dismissed with the right to replead, a plaintiff may decline to replead, accept an adverse judgment dismissing the action, and on appeal from the judgment secure review of the ruling requiring repleading. *See Connecticut National Bank v. Fluor Corp.*, 808 F.2d 957 (2d Cir.1987). In doing so, the plaintiff takes a calculated risk. He stands or falls on the success of his challenge. If the order requiring repleading is upheld, the case is over. The plaintiff may not then choose to replead. To give him this option would be the same as allowing an interlocutory appeal from the ruling requiring repleading. Only if the appellate court agrees that repleading should not have been required may the plaintiff return to the trial court and proceed on his original complaint. In this case Atlanta is entitled to stand or fall on its challenge to the repleading requirement. As with the claims dismissed outright, Atlanta clearly could have the repleading ruling reviewed if it had abandoned the BCL § 720 claim, to which we now turn.

■ The BCL § 720 claim was the only one not dismissed by the March 25 order. However, Atlanta was required to post a bond as a condition of pursuing that claim. We think Atlanta was entitled to invite a final judgment, obtain review of the bond order, and stand or fall on the success of its challenge. A bond requirement, like a repleading requirement, places an absolute barrier in the path of a plaintiff. He need not comply as the price of securing review. However, he takes a risk. If his challenge fails, he may not then return to court, post the bond, and proceed. *See Montserrat Overseas Holdings, S.A. v. Larsen*, 709 F.2d 22 (9th Cir.1983).

■ We can now assess the reviewability of all three aspects of the March 25 order in relation to each other. Since the bond requirement constitutes an absolute barrier to proceeding on the BCL § 720 claim, that claim was not available to be pursued when Atlanta chose to accept a final judgment. Atlanta need not completely abandon that claim as a price of seeking review of the repleading ruling or the outright dismissal ruling. However, Atlanta can be no better

off than it would have been if the BCL § 720 claim were its only claim. It must stand or fall on its challenge to the bond and forgo the BCL § 720 claim if the bond ruling is affirmed.

■ The situation is the same as to the repleading ruling. Atlanta need not abandon the DCL § 276 claim as the price of seeking review of the outright dismissal ruling. But, again, it can be no better off than if this were its only claim. Atlanta must stand or fall on its challenge to the repleading ruling and forgo that claim if the repleading ruling is affirmed. The bond requirement makes no difference. Atlanta is entitled to view the repleading requirement and the bond requirement in sequence, even though they were contained in the same order. Had the repleading requirement been issued first, Atlanta could have invited a final judgment at that point and chosen to stand or fall on its challenge to the repleading ruling. It should not be worse off just because the District Court has imposed a second requirement—the bond—as a condition both of repleading the DCL § 276 claim and of pursuing the BCL § 720 claim.

Since neither the DCL § 276 claim nor the BCL § 720 claim is fully available to be pursued, we see no reason why Atlanta must abandon them to secure review of the ruling dismissing outright all of its other claims. Though abandonment of those two claims would have been the price of accepting final judgment to obtain review of the ruling dismissing the other claims if those claims could have been freely pursued, that price should not be exacted in the circumstances of this case. Atlanta did not have a choice between (1) pursuing its DCL § 276 and BCL § 720 claims and then seeking review of the outright dismissal ruling on appeal from an ultimate judgment, or (2) abandoning the two claims in order to secure immediate review of that ruling on appeal from a judgment entered after a Rule 41(a)(2) dismissal. Its pursuit of the two claims was blocked by rulings it was entitled to challenge on a "stand or fall" basis. Having elected to accept a final judgment and challenge the repleading and the bond rulings on a "stand or fall" basis, Atlanta has not lost the opportunity for review of the outright dismissal ruling. And Atlanta need not replead the DCL § 276 claim nor post the bond, thereby sacrificing its "stand or fall" position with respect to the DCL § 276 and BCL § 720 claims, in order to obtain review of the outright dismissal ruling.[3] *Cf. Montserrat Overseas Holdings, S.A. v. Larsen, supra,* 709 F.2d at 23–24.

A.  Admiralty Jurisdiction

■ Judge Goettel carefully considered whether Atlanta's equitable claims against Chemical Bank were within the admiralty jurisdiction of the federal court. He acknowledged that "the power of an admiralty court extends to adjudicating whether a judgment debtor fraudulently conveyed assets to avoid an admiralty judgment." 631 F.Supp. at 341. He ruled that admiralty jurisdiction was lacking, however, because the allegedly fraudulent transfer had occurred long before any judgment was entered in favor of Atlanta and Atlanta therefore could not and did not allege that IMH's transfers to Chemical "were a calcu-

**3.** Though in form the District Court dismissed the action upon Atlanta's failure to take the "required" step of posting a bond, we do not understand the District Judge to have endeavored to punish Atlanta for failing to post the bond, thereby putting into question whether the appellate review we are allowing is warranted. Atlanta's decision not to post the bond did not constitute disrespect for the District Court nor abuse of the processes of the Court. Its "violation" of the order to post the bond is properly viewed, at least in the circumstances of this case, as in substance an election not to meet the condition imposed by the Court for proceeding with both the repleading of the section 276 claim and the pursuit of the section 720 claim. Since, as will appear, we uphold the bond requirement, we have no occasion to consider whether rejection of the bond requirement would destroy the finality of the judgment and preclude review of other issues. *Compare Perington Wholesale, Inc. v. Burger King Corp.,* 631 F.2d 1369 (10th Cir.1979) (grant of partial summary judgment for defendant reviewed on appeal that reversed dismissal for failure to state a claim), *with Weil v. Investment/Indicators, Research and Management, Inc.,* 647 F.2d 18, 25–27 (9th Cir.1981) (denial of class certification not reviewed on appeal that reversed dismissal for failure to post bond).

lated attempt to avoid [the District Court's] admiralty jurisdiction." *Id.* Atlanta challenges this ruling, contending that an admiralty court may set aside a fraudulent transfer aimed at frustrating a maritime debt even where the transfer has preceded entry of an admiralty judgment. Though admiralty jurisdiction is available in some circumstances to challenge transfers that occurred prior to judgment, we reject Atlanta's broad assertion that an admiralty court may set aside a fraudulent transfer even if it is not exercising admiralty jurisdiction over traditional admiralty claims.

■ Ordinarily, federal admiralty jurisdiction is strictly limited to claims traditionally raised in admiralty. A notable exception to this rule extends that jurisdiction to encompass equitable claims, such as that of fraudulent transfer, in certain circumstances. In 1878, the Circuit Court for the District of Louisiana upheld a judgment setting aside a fraudulent transfer aimed at evading a judgment entered in admiralty; the Court held that an admiralty court has jurisdiction to enforce its own judgments. *Lee v. Thompson,* 15 F.Cas. 233 (C.C.D.La. 1878) (No. 8,202). In *Swift & Company Packers v. Compania Colombiana Del Caribe, S.A.,* 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950), the Supreme Court extended the ruling in *Lee* to encompass fraudulent transfers aimed at frustrating an admiralty court's authority to attach property to secure a maritime claim. The libellant in *Swift* filed a suit *in personam* against Compania Transmaritima Colombiana, S.A. ("Transmaritima") and attempted to attach Transmaritima's ship as security. Upon learning that Transmaritima had transferred ownership of the vessel to a hastily organized subsidiary, Swift filed a supplemental libel against that company and again sought attachment. Writing for the Court, Justice Frankfurter held that the District Court had jurisdiction in admiralty to review the transfer of the vessel, stating that "[t]he basis of admiralty's power is to protect its jurisdiction from being thwarted by a fraudulent transfer, and that applies equally whether it is concerned with executing its judgment or authorizing an attachment to secure an inde-

pendent maritime claim." *Id.* at 694–95, 70 S.Ct. at 867–68.

■ *Lee* and *Swift* teach that a libellant may invoke admiralty jurisdiction over subsidiary claims in equity only after it has initiated a primary action properly within the jurisdiction of an admiralty court. Atlanta's action against Chemical does not fall within the ambit of this rule. The dispute between Atlanta and IMH would have given rise to a maritime claim. However, Atlanta never filed a libel against IMH to vindicate its rights in a court of admiralty. Atlanta contends that the fact of a related maritime dispute is sufficient to confer admiralty jurisdiction over its independent action to assert equitable claims against Chemical. We disagree. An admiralty plaintiff must have invoked the admiralty court's jurisdiction over litigation properly before it in order to permit the court to consider equitable claims subsidiary to that litigation. Having never invoked the jurisdiction of an admiralty court over any primary admiralty claim, Atlanta cannot now invoke admiralty jurisdiction against a third party over the derivative claim of an alleged fraudulent transfer. Atlanta is not pursuing a "derivative issue in a litigation clearly maritime," nor is equitable relief sought "in the course of admiralty's exercise of its jurisdiction over a matter exclusively maritime." *Swift, supra,* 339 U.S. at 691, 70 S.Ct. at 866.

### B. Dismissals Pursuant to Fed.R.Civ.P. 12(b)(6)

In reviewing Judge Goettel's dismissal of claims pursuant to Fed.R.Civ.P. 12(b)(6), we take as true Atlanta's factual allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### 1. DCL §§ 273–275 Claims

■ An essential element of a claim pursuant to DCL §§ 273, 273–a, 274, 275 is lack of fair consideration. DCL § 272 states that fair consideration is given for an obligation "[w]hen in exchange for such ... obligation, as a fair equivalent therefor, and in good faith, ... an antecedent

debt is satisfied...." In general, repayment of an antecedent debt constitutes fair consideration unless the transferee is an officer, director, or major shareholder of the transferor. *In re Checkmate Stereo and Electronics, Ltd.*, 9 B.R. 585, 617 (Bankr.E.D.N.Y.1981), *aff'd*, 21 B.R. 402 (E.D.N.Y.1982); *Southern Industries, Inc. v. Jeremias*, 66 A.D.2d 178, 411 N.Y.S.2d 945 (2d Dep't 1978). Atlanta concedes that IMH's payments to Chemical satisfied an antecedent debt and that Chemical was not an officer, director, or shareholder of IMH. On this basis, Judge Goettel dismissed Atlanta's claims pursuant to DCL §§ 273, 273–a, 274, 275.

■ Atlanta contends that Chemical's special knowledge of IMH's financial obligations to other creditors when it extended its $3 million loan to IMH in January 1977 defeats any assertion that such loan was entered into and repaid in good faith. As support for this theory, Atlanta cites *United States v. Gleneagles Inv. Co.*, 565 F.Supp. 556 (M.D.Pa.1983), *aff'd in part sub nom. United States v. Tabor Court Realty Corp.*, 803 F.2d 1288 (3d Cir.1986), in which the court avoided a mortgage given to a lender to secure a loan on the ground that the transaction was not entered into in good faith, 565 F.Supp. at 574–77; 803 F.2d at 1295–96. *See Southern Industries, Inc. v. Jeremias, supra*, 411 N.Y.S.2d at 949 (stating that in construing DCL § 272, New York courts should look to the decisions of other jurisdictions interpreting parallel provisions derived from the Uniform Fraudulent Conveyances Act). In *Gleneagles*, the lender "knew or strongly suspected" at the time it made the loan that the proceeds would be used to repurchase the debtor's stock from its shareholders and that the imposition of the loan obligation secured by the mortgage would render the debtor insolvent and decrease the assets available to creditors. *United States v. Gleneagles Inv. Co., supra*, 565 F.Supp. at 566–68, 574. In the present case, although Chemical knew that IMH was in financial difficulty, it also knew that the $3 million loan extended to IMH in January 1977 was to be used to repay loans by DIC and Underhill. Thus,

unlike in *Gleneagles*, the $3 million loan did not adversely affect the debtor's balance sheet, nor encumber IMH's ability to meet its other obligations. We do not believe, therefore, that Atlanta has pleaded any cognizable theory on which a court could conclude that the Chemical Bank loans were made or repaid in bad faith. Consequently, we affirm dismissal of Atlanta's claims under DCL §§ 273, 273–a, 274, 275.

## 2. Article 9 Claim

In its amended complaint Atlanta charged Chemical with violating Article 9 of the New York Uniform Commercial Code ("UCC") by "receiving the proceeds of the sale of approximately 141 modular homes which had been assigned to Atlanta pursuant to the Credit Agreement." This alleged violation occurred on March 12, 1980, when Chemical exercised a setoff against IMH's bank account containing proceeds from the sale of homes that IMH had pledged to Atlanta. Judge Goettel found that Atlanta had withdrawn this Article 9 claim in response to Chemical's motion for partial summary judgment. He held that even if the claim were not withdrawn, he would grant Chemical partial summary judgment since the claim is essentially one of conversion and is therefore barred by New York's three-year statute of limitations for actions to recover damages to property, N.Y.Civ.Prac.L. & R. 214(4) (McKinney Supp.1987).

■ We agree that Atlanta's purported Article 9 claim is essentially a claim in conversion. New York law defines conversion as "any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." *Meese v. Miller*, 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 (4th Dep't 1981) (citation omitted). Invasion of a right to possession retained as a security interest may establish a conversion actionable under New York law. *R.L. Rothstein Corp. v. Kerr Steamship Co.*, 21 A.D.2d 463, 467, 251 N.Y.S.2d 81, 84 (1st Dep't 1964), *aff'd*, 15 N.Y.2d 897, 258 N.Y.S.2d 427, 206

N.E.2d 360 (1965). Atlanta's allegation that Chemical knowingly received money in which Atlanta held a superior security interest falls squarely within this doctrine.

Atlanta disputes the District Court's characterization of its Article 9 claim, contending that the complaint states a claim of intentional interference with contract and is governed by the six-year statute of limitations for contract actions. N.Y.Civ. Prac.L. & R. 213 (McKinney Supp.1987). We reject this argument as plainly inconsistent with the language of the amended complaint, which specifically states that Chemical wrongfully received property belonging to Atlanta. Atlanta cannot recast its complaint on appeal to circumvent the force of the statute of limitations. The District Court correctly dismissed this claim as time-barred.

### 3. BCL §§ 510, 719 Claims

■■ Atlanta contends that Judge Goettel erred in dismissing its claims under BCL §§ 510, 719 for failure to state a claim upon which relief could be granted. These provisions create a cause of action solely against members of the board of directors of a corporation. Since Atlanta has not alleged that Chemical served as a member of IMH's board of directors, we affirm Judge Goettel's dismissal of Atlanta's claims under BCL §§ 510, 719.

### 4. Trust Fund Doctrine and Preference Claims

■■ On appeal, Atlanta suggests that its claims pursuant to BCL §§ 510, 719 as well as its general references to New York common law invoke the "trust fund" doctrine, *Bischoff v. Yorkville Bank*, 218 N.Y. 106, 112 N.E. 759 (1916); *Ward v. City Trust Co. of New York*, 192 N.Y. 61, 84 N.E. 585 (1908). Although Atlanta failed to refer to this doctrine directly in its amended complaint, we believe that this claim was fairly comprehended by its allegations. Under the trust fund doctrine in New York, a bank may not knowingly accept funds from a trust fund account in satisfaction of a personal obligation of the trustee. *Grace v. Corn Exchange Bank*

*Trust Co.*, 287 N.Y. 94, 103, 38 N.E.2d 449, 452 (1941); *Bischoff v. Yorkville Bank, supra,* 218 N.Y. at 111–12, 112 N.E. at 760–61. In the present case, the setoff satisfied IMH's loan obligation to Chemical Bank. Atlanta has not alleged that the setoff satisfied a personal obligation of a trustee of IMH; at most, Atlanta has alleged that the setoff reduced the potential obligation of DIC and Underhill, guarantors of IMH's debt. This is insufficient to state a cause of action under New York's trust fund doctrine.

■■ Atlanta contends further that the District Court erred in dismissing its claim sounding in common law preference. The principal case that Atlanta cites for this claim, *Southern Industries, Inc. v. Jeremias, supra,* applies only to transfers received by directors of insolvent corporations, 411 N.Y.S.2d at 950. Atlanta has not alleged that Chemical Bank was an insider of IMH. We also reject Atlanta's contention that the decision in *Matters v. Manufacturers' Trust Co.,* 54 F.2d 1010 (2d Cir. 1931), states a preference theory upon which Atlanta may obtain relief. To the extent that the finding of a preferential payment in *Matters* survived the repeal of section 15 of the former New York Stock Corporation Law, *cf. Southern Industries, Inc. v. Jeremias, supra,* 411 N.Y.S.2d at 949–50, that holding is limited to setoffs following an intentional buildup of funds, *Matters v. Manufacturers' Trust Co., supra,* 54 F.2d at 1013. Atlanta has not alleged any such buildup of funds. Consequently, we affirm Judge Goettel's dismissal of Atlanta's preference claim under New York common law.

### 5. Aiding and Abetting Claims

■■ The District Court dismissed Atlanta's various aiding and abetting claims on the ground that the statutes allegedly violated do not create a cause of action against aiders and abettors. 631 F.Supp. at 348–49. While we agree with the District Court that New York's Debtor and Creditor Law does not authorize actions against those who aid and abet violations of BCL §§ 510, 719, or 720, we observe

that New York common law recognizes a cause of action for aiding and abetting wrongful diversion of funds. *See Ballantine v. Ferretti,* 28 N.Y.S.2d 668, 690–91 (Sup.Ct.1941); *In re O.P.M. Leasing Services, Inc.,* 28 B.R. 740, 759 (Bankr.S.D.N.Y.1983). In order to be held liable as an aider or abettor under this cause of action, a person must be shown to have knowingly completed acts with the purpose of aiding and abetting the accomplishment of an illegal scheme. *See Ballantine v. Ferretti, supra,* 28 N.Y.S.2d at 690–91; *Lonsdale v. Speyer,* 249 A.D. 133, 291 N.Y.S. 495, 505 (1936). In the present case, Atlanta has alleged no more than that Chemical, while aware of wrongful activity by IMH, accepted repayments of loans duly owed it by IMH. We do not believe that these allegations establish a cause of action for aiding and abetting a civil conspiracy under New York law. Consequently, we affirm Judge Goettel's dismissal of Atlanta's aiding and abetting claims.

## C. Requirement to Replead Claim Under DCL § 276

Although Judge Goettel denied Chemical's motion to dismiss the claim pursuant to DCL § 276 for failure to state a claim upon which relief may be granted, he ordered Atlanta to replead this claim with particularity pursuant to Fed.R.Civ.P. 9(b) within thirty days. Atlanta refused to comply with this order and now contends that the District Court erred in requiring repleading.

■ DCL § 276 provides: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, *is fraudulent* as to both present and future creditors." (emphasis added). Fed.R.Civ.P. 9(b) requires that averments of fraud and mistake be pleaded with particularity. Though DCL § 276 is triggered by an actual intent to hinder, delay, or defraud, all three means of damaging creditors are within a general category that the statute categorizes as "fraudulent." Judge Goettel therefore correctly ruled

that allegations of violating DCL § 276 must plead the requisite mental state with particularity. Atlanta's pleading was properly found to be deficient.

## D. BCL § 720

The final issue raised by this appeal concerns the status of Atlanta's claim pursuant to BCL § 720. Because the District Court denied motions to dismiss or to require repleading of this claim, the sole basis for its dismissal was Atlanta's failure to post the $10,000 bond required by the District Court. "The scope of review of an order of dismissal is confined solely to whether the trial court has exercised its inherent power to manage its affairs within the permissible range of its discretion." *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 43 (2d Cir.1982). *See Chism v. National Heritage Life Ins. Co.,* 637 F.2d 1328, 1331 (9th Cir.1981); *Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 666 (2d Cir.1980); *Haberman v. Tobin,* 626 F.2d 1101, 1104–05 (2d Cir.1980).

■ In diversity actions, federal courts are "not bound to follow state rules on security for costs where a federal local rule granting discretion is applicable," although they may look to state rules for guidance. *Rapol v. Henry R. Jahn & Son, Inc.,* 84 F.R.D. 42, 45 (S.D.N.Y.1979). *See generally* 6 *Moore's Federal Practice* ¶ 54.73 at 54–375–76 (1986). Rule 39 of the Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, which applies in this action, provides that "[t]he court, on motion or in its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate."

Judge Goettel based his requirement of a $10,000 security bond for costs on the following grounds:

In this case we perceive a high risk that the plaintiff, a debtor in bankruptcy, will be unable to pay the defendant's costs should the defendant prevail. The plaintiff itself admits that it "has no liquid assets except claims before this Court and claims in other districts...."

[citation omitted]. Although we do not believe that plaintiff brought this action only to harass the defendant, Atlanta's lack of assets and status as a debtor in bankruptcy counsels us to require it to post a bond as security for costs.

631 F.Supp. at 353 (footnote omitted). In setting the $10,000 bond requirement, Judge Goettel specifically noted that the amount of the bond should not "seriously impede" Atlanta's ability to prosecute the action. *Id.*

 We hold that Judge Goettel acted within his discretion in requiring Atlanta to post a $10,000 security bond and dismissing the action for failure to comply with this requirement. His concern that a bond was needed to assure the defendant recovery of its costs if it prevailed was fully justified. *Cf. Montserrat Overseas Holdings, S.A. v. Larsen, supra,* 709 F.2d at 24–25; *Rapol v. Henry R. Jahn & Sons, supra,* 84 F.R.D. at 45. Rule 39 expressly permits a sanction of dismissal for failure to comply with the posting of a bond required thereunder.

Atlanta attacks the constitutionality of N.Y.Civ.Prac.L. & R. 8501(a) (McKinney 1981),[4] the New York statute providing security for costs, on the ground that it violates the Equal Protection Clause. *See Coady v. Aguadilla Terminal Inc.,* 456 F.2d 677, 679 (1st Cir.1972) (suggesting that a requirement that all foreign plaintiffs post substantial security as a condition of access to the courts may be unconstitutional). Because Judge Goettel did not base the bond requirement on factors specific to N.Y.Civ.Prac.L. & R. 8501, in particular the domicile of the plaintiff corporation, we decline to reach this constitutional challenge. Accordingly, we affirm dismissal of Atlanta's claim pursuant to BCL § 720 for failure to post security.

### Conclusion

Since the bond was properly required and not posted, the BCL § 720 claim was prop-

erly dismissed. Since the order requiring repleading of the DCL § 276 claim was correct and Atlanta elected not to replead, that claim was properly dismissed. The rulings dismissing all of the other claims were correct. The judgment dismissing the entire action is therefore affirmed.

---

**4.** N.Y.Civ.Prac.L. & R. 8501(a) provides, in pertinent part, that

upon motion by the defendant without notice, the court or a judge thereof shall order security for costs to be given by the plaintiffs where none of them is a domestic corporation, a foreign corporation licensed to do business in the state or a resident of the state when the motion is made.